*In re* CHRISTOPHER FRIBERG, Alleged to be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Christopher Friberg, Respondent-Appellant).

Second District   No. 2—92—0479

Opinion filed August 9, 1993.

William E. Coffin, of Guardianship & Advocacy Commission, of Elgin, and Susan J. Curry, of Hines, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COLWELL delivered the opinion of the court:

Respondent, Christopher Friberg, appeals from an order of the circuit court of Winnebago County finding him to be a person subject to involuntary admission under section 3—701(a) of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/3—701(a) (West 1992)), and hospitalizing him in the Department of Mental Health and Developmental Disabilities (Department) (405 ILCS 5/3—700 (West 1992)). Respondent appeals, alleging the trial court's order must be reversed because he was denied a verbatim record of the proceedings. Alternatively, respondent alleges that the trial court failed to order the least restrictive alternative treatment and that the State failed to prove by clear and convincing evidence that he was unable to provide for his basic physical needs. We affirm.

A petition for respondent's involuntary admission was filed on March 31, 1992, alleging respondent to be "[a] person who is mentally ill and who because of his/her illness is unable to provide for his/her basic physical needs so as to guard himself/herself from serious harm." A report dated March 30, 1992, signed by Elizabeth Bolser Carpenter, LCSW, at the Janet Wattles Mental Health Clinic (Janet Wattles), found respondent to have a severe thought disorder and delusions that he is God. Carpenter also found respondent incoherent and unable to respond. A psychiatrist at the H.D. Singer Mental Health Clinic (Singer) also filed a report dated March 31, 1992, which noted that respondent exhibited aggressive and delusional behavior. The report stated that respondent was delusional, agitated, unpredictable, dangerous, and in further need of psychiatric assessment.

The State presented four witnesses at the April 6, 1992, hearing on the petition. Judith Friberg, respondent's mother, testified that she lived with respondent. Respondent had been working at McDonald's Restaurant for approximately two years. She received a phone call on March 30, 1992, asking her to come to McDonald's to see respondent. Respondent was talking to the manager and telling people he was God when Judith arrived. Respondent did not want to go with the police because he was God and the law did not apply to him. Judith followed the police as they escorted respondent to

Janet Wattles. There, respondent continued saying he was God or an individual named "Zero" and that the phones should all be thrown out.

Judith also described an incident that occurred in their home approximately three weeks prior to the hearing. She was speaking to respondent and his twin brother, Kevin, when respondent started saying that God told him he had a sister named Jennifer. Judith testified that respondent has no sister. In another incident, Judith was speaking to respondent about cleaning up after himself in the house. The discussion escalated into an argument. Judith told respondent if he could not follow the rules he would have to move out. Judith said she had been told by a psychiatrist that she should seek help if respondent had any eruptions. She moved toward the phone to call for help but respondent physically restrained her arms when she tried to get to the phone. Judith testified that she thought respondent would not intentionally hurt her but that she had sustained bruises on her arms from the restraint. Respondent then removed the phone from the wall.

Kevin Friberg, respondent's brother, testified about an incident which occurred approximately one week before the hearing. Respondent said God told him he had been sexually abused by his mother and father. Respondent stated that God also told him he was supposed to be a female. Kevin admitted to receiving psychiatric treatment about six months prior to the hearing. Kevin was not on medication at the time of his testimony but was still in counseling.

Richard Apple, social work administrator at Singer, testified concerning an incident regarding respondent on March 31, 1992. Respondent was at that time locked in a seclusion area. Apple received a call for help from the nurses' station located near the seclusion area. Apple approached the area and saw respondent racing toward the reinforced window to the door of the seclusion area and ramming himself against it. The glass shattered when Apple arrived. Apple and some staff members had to physically carry respondent to a restraint bed because he would not stop voluntarily. Respondent suffered a small cut to his finger.

The State's last witness was Dr. Lewis. However, Lewis' testimony on the audio tape was accidentally recorded over and thus unavailable for transcription. (All testimony from the April 6 hearing had been recorded on a cassette tape with no court reporter present.) The parties thereafter filed an agreed statement of facts

prepared by the assistant public defender and the State's Attorney summarizing the testimony of Lewis in this matter.

According to the summary, Lewis testified that he interviewed respondent for approximately 20 to 30 minutes on April 3, 1992, at Singer. Lewis had not met with respondent prior to their interview. Respondent informed him that he was sent to Singer because he had given away free food while working at McDonald's. Respondent thought it would be a better world if no one had to pay bills. He had the name God put on his name tag. Respondent wanted the white men to get off the Indian land. Lewis referred to respondent's medical records which indicated he displayed a flat affect and grandiose delusions on the day he smashed the seclusion area window. Respondent allegedly said at that time, "I am quite capable of killing you and I will if I get loose."

Lewis opined that respondent is a person who is mentally ill. Lewis based his opinion upon his interview of respondent, his examination of respondent's medical charts, and the testimony of the witnesses previously called during the hearing. Lewis believed that respondent was reasonably expected to inflict serious physical harm upon himself in the near future based on his breaking the glass in the seclusion area. Lewis found no basis to expect that respondent was likely to harm another. Lewis concluded that respondent was unable to provide for his basic needs so as to guard himself from serious harm. Lewis noted the extent of respondent's delusions, in particular, his insistence on giving away food at his job. Lewis believed respondent's delusions caused him to be unable to conform his behavior to the expectations of society. Lewis' diagnosis of respondent was: "Clinical Impression: Schizophrenia, paranoid type, acute, with delusions of grandeur and persecution, agitation, destruction of property, aggressive and threatening behavior due to his mental illness." Lewis' certificate of his examination of respondent, required under the Code (405 ILCS 5/3—602 (West 1992)), restates some of the above summary.

The trial court rendered its decision on April 9, 1992, noting that respondent's actions were clearly indicative of a person who is in a very active mental state, indicating a high degree of psychosis. Respondent's behavior convinced the trial court he was an individual who cannot conform his behavior to real life surroundings. The trial court concluded that respondent could not function in an everyday environment and would not be able to care for himself if he did not stabilize his condition. Accordingly, the trial court found by clear and convincing evidence that respondent is unable to provide

for his own basic needs so as to guard himself from serious harm. Respondent filed a timely appeal.

Respondent first contends the trial court's order must be reversed because respondent was denied his statutory rights to an appeal and a verbatim record of the proceedings when Lewis' testimony was accidentally recorded over and thus unavailable as evidence. Section 3—817 of the Code provides: "A verbatim record shall be made of all judicial hearings held pursuant to this Chapter." (405 ILCS 5/3—817 (West 1992).) In *In re Hays* (1983), 115 Ill. App. 3d 686, respondent had voluntarily admitted himself to Mercy Hospital. A social worker at the hospital filed a petition alleging respondent to be a person subject to involuntary admission after he exhibited violent behavior. The State's Attorney inquired of defense counsel at the commencement of the hearing whether counsel would waive part of the recording of the testimony since the reporter had to be absent during the first part of the testimony. Defense counsel agreed. Respondent then argued that he was deprived of a record for purposes of appeal by his counsel's waiver of the presence of a reporter at the earlier stage of the proceeding. Respondent argued the incomplete record made it impossible to determine whether he asked for discharge from voluntary status. The appellate court noted that, where mental competency is at issue, both the State and defense counsel should be extremely wary of waiver. (*Hays*, 115 Ill. App. 3d at 689.) The court further noted that, where a full verbatim transcript is lacking, the parties have recourse to Supreme Court Rule 323(c) (134 Ill. 2d R. 323(c)) governing bystander's reports. The respondent in *Hays* was responsible as the appellant for presenting an adequate record to the reviewing court, yet he made no argument that he was prevented from preparing a Rule 323(c) report. The court found the issue concerning the record to be without merit under the circumstances in that case although the court stated it did not condone the parties' waiver of the court reporter. *Hays*, 115 Ill. App. 3d at 690.

Unlike in *Hays*, the parties here filed an agreed statement of facts which purportedly constituted an adequate record of Lewis' testimony. The case at hand concerns subsection (d) of Rule 323, which provides in pertinent part: "(d) Agreed Statement of Facts. The parties by written stipulation may agree upon a statement of facts material to the controversy and file it without certification in lieu of and within the time for filing a report of proceedings." (134 Ill. 2d R. 323(d).) Respondent correctly states that he did not waive his rights to a verbatim transcript of the testimony. However, we

find a waiver was not necessary where respondent's attorney assisted in the preparation of the statement of facts, agreed to its content, and signed the document. We agree with the comment in *Hays* that the absence of a verbatim transcript is usually a situation to be avoided. However, the parties here were without a full transcript, not by mutual waiver, but due to a recording error. The parties submitted an agreed statement of facts under Rule 323(d), and we find such statement is adequate under these circumstances and does not render the order of commitment invalid. Accordingly, respondent had access to an adequate record in order to proceed with his appeal and therefore was not denied his rights under due process.

In spite of our ruling, we sympathize with the dilemma of the trial court on this issue. The Code states that a "verbatim record" shall be made of all judicial hearings but does not define "verbatim." The Webster's Third New International Dictionary 2542 (1986) defines "verbatim" as "reproduced from or repeating an original source word for word: following the original exactly." The Court Reporters Act states in relevant part:

"The court reporter shall make a full reporting by means of stenographic hand or machine notes, or a combination thereof ***. In the event that the court utilizes an audio or video recording system to record the proceedings, a court reporter shall be in charge of such system; however, the appointment of a court reporter to be in charge of an audio or video recording system shall not be required where such system is the judge's personal property or has been supplied by a party or such party's attorney." (705 ILCS 70/5 (West 1992).)

While the audio system utilized here is appropriate under the Court Reporters Act, this case demonstrates that an audio recording alone does not always produce a complete verbatim record as required under the Code. Significant testimony from Dr. Lewis was lost due to a recording error. In addition, the recording that survived was inaudible during some of the testimony which caused incomplete sentences in the transcript. We note that the lack of resources available to supply court reporters at all such hearings compromises the trial court's effort to comply properly with the requirement of a verbatim record. The record here was sufficient to affirm the trial court's findings; however, a case may arise where such a transcript is insufficient, even though the evidence concerning the mental illness of the respondent may be clear and convincing. We urge the

future use of court reporters during such hearings in order to avoid the consequences of this scenario.

■ We also reject respondent's argument that the trial court failed to order the least restrictive treatment alternative for respondent. Section 3—811 of the Code provides in relevant part:

> "If any person is found subject to involuntary admission, the court shall consider alternative mental health facilities which are appropriate for and available to the respondent, including but not limited to hospitalization. *** The court shall order the least restrictive alternative for treatment which is appropriate." 405 ILCS 5/3—811 (West 1992).

Respondent argues that neither the trial court's order nor the evidence presented indicated that hospitalization was the least restrictive alternative for respondent. (See *In re Devine* (1991), 214 Ill. App. 3d 1, 7.) In *Devine*, the respondent argued that the order committing him to the Department must be overturned because it did not set out the least restrictive alternative treatment. This court found that the failure of the order to refer to the restrictiveness of the treatment was not fatal. We noted that although the Code directs the court to order the least restrictive alternative treatment, it does not say the court must make a finding that the treatment it is ordering is the least restrictive alternative. (*Devine*, 214 Ill. App. 3d at 7; see also *In re Long* (1992), 233 Ill. App. 3d 334, 340 (the statute directs the court to order the least restrictive alternative treatment, but does not order the court to make a specific showing of doing so).) We find that the trial court's order here need not have included a statement indicating it considered hospitalization to be the least restrictive treatment alternative.

Furthermore, the record reflects a consideration and rejection of less restrictive alternatives. Dr. Lewis' written report, which described respondent's act of smashing the reinforced glass door to the seclusion area, specifically stated respondent was "[i]n need of immediate and continuing hospitalization." The agreed statement of facts summarizing Lewis' testimony states that Lewis found respondent to be mentally ill and unable to provide for his basic needs. Lewis opined that respondent's delusions caused him to be unable to conform his behavior to the expectations of society.

The disposition evaluation prepared for the trial court by Richard Apple, LCSW, stated: "Hospitalization is necessary because Christopher presents a danger to himself and others until he has achieved a psychiatric and behavioral stability." Apple's testimony also described the window-breaking episode and indicated four as-

sistants were needed to restrain respondent after this incident. We find the evidence at the hearing provided a sufficient basis upon which the court could find that involuntary hospitalization was the least restrictive treatment alternative.

Respondent last contends that the trial court's order for involuntary admission must be reversed because it was not supported by clear and convincing evidence. A person is subject to involuntary admission if he is mentally ill and because of his illness is unable to provide for his basic physical needs so as to guard himself from serious harm. (405 ILCS 5/1—119(2) (West 1992).) No respondent may be found subject to involuntary admission unless that finding has been established by clear and convincing evidence. (405 ILCS 5/3—808 (West 1992).) Such a clear and convincing finding must be based on the current condition of the respondent's illness and the likelihood of future harm he might cause. (*In re Houlihan* (1992), 231 Ill. App. 3d 677, 682-83.) As this court has noted:

> " 'To meet its burden of proof the State must submit "explicit medical testimony" that the respondent can be expected to be a serious danger to himself or someone else because of his mental illness. ***
>
> The trial court's decision following an involuntary admission hearing is given great deference and will not be set aside at the appellate level, even if the reviewing court, after applying the clear and convincing standard, would have ruled differently. [Citation.] The trial court is in the best position to determine the credibility of the testifying witnesses and weigh the evidence. Its determination should not be reversed unless it is manifestly erroneous.' " *In re Cutsinger* (1989), 186 Ill. App. 3d 219, 223, quoting *In re Orr* (1988), 176 Ill. App. 3d 498, 504-05.

We find the trial court's decision that respondent was subject to involuntary hospitalization was not manifestly erroneous. The evidence indicates respondent smashed a reinforced window in the seclusion area at the hospital and later stated "I am quite capable of killing you and I will if I get loose." Respondent was giving away free food while working at McDonald's and told those around him that he was God. Respondent forcibly restrained his mother at their house when she attempted to call someone to get help for him.

Lewis opined that respondent was mentally ill, specifically that he suffered from "[s]chizophrenia, paranoid type, acute, with delusions of grandeur and persecution, agitation, destruction of prop-

erty, aggressive and threatening behavior due to his mental illness." Lewis stated that respondent was unable to provide for his basic needs so as to guard himself from serious harm and that respondent's delusions caused him to be unable to conform his behavior to the expectations of society. Apple also indicated his belief that hospitalization is necessary until respondent achieved psychiatric and behavioral stability.

For the foregoing reasons, we affirm the judgment of the circuit court of Winnebago County.

Affirmed.

BOWMAN and QUETSCH, JJ., concur.