NO. 4-10-0260          Filed 12/23/10

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | |
|---|---|
| In re: JAMES H., a Person Found Subject to Involuntary Admission,<br>THE PEOPLE OF THE STATE OF ILLINOIS,<br>　　　　Petitioner-Appellee,<br>　　　　v.<br>JAMES H.,<br>　　　　Respondent-Appellant. | ) Appeal from<br>) Circuit Court<br>) Sangamon County<br>) No. 10MH262<br>)<br>)<br>) Honorable<br>) Esteban F. Sanchez,<br>) Judge Presiding. |

_____

JUSTICE KNECHT delivered the opinion of the court:

Respondent, James H., appeals from the trial court's order of involuntary admission pursuant to section 3-600 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/3-600 (West 2008)). Respondent seeks reversal because the petition to involuntarily admit him failed to strictly comply with section 3-601(b)(2) of the Code and the court violated his constitutional and statutory rights to treatment in the least-restrictive environment. We affirm.

I. BACKGROUND

On March 29, 2010, the State filed a petition for the involuntary admission of respondent under section 3-600 of the Code  (405 ILCS 5/3-600 (West 2008)). The petition alleged respondent was mentally ill and by reason of the mental illness (1) was reasonably expected to inflict serious physical harm on himself or another in the near future and (2) was unable to provide for his basic physical needs so as to guard himself from serious harm. In support of those allegations, the petition

provided the following factual basis:

> "Schizophrenia, paranoid type with delusions.
> Client believes he is the son of God and is
> on earth to save us from evil."

The following portion of the petition was left blank:

> "Listed below are the names and addresses of
> the spouse, parent, guardian, or substitute
> decision maker, if any, and close relative
> or, if none, a friend of the respondent whom
> I have reason to believe may know or have any
> of the other names and addresses.  If names
> and addresses are not listed below, I made a
> diligent inquiry to identify and locate these
> individuals and the following describes the
> specific steps taken by me in making this
> inquiry ***."

The petition was accompanied by the certificates of one psychiatrist, one physician, and one qualified examiner as well as a lengthy written statement by the respondent describing himself as the son of God sent to do his Father's bidding.  This includes battling with and killing demons.  He specifically identifies President Obama as one of the demons.

The trial court set a hearing on the petition for April 2, 2010.  At the hearing, psychiatrist Kasturi Kripakaran testified as an expert witness in psychiatry.  Dr. Kripakaran was currently treating respondent at McFarland Health Center.  She

- 2 -

testified respondent suffered from schizophrenia due to fixed delusions he was the son of God named King James 777 and was "here to protect us from all evil." He believed President Obama comes from the clone hierarchy and is evil. Dr. Kripakaran recounted that respondent believes he "needs to protect us from the evil," would like to speak to President Obama face to face as Obama is Cain and respondent is Abel, and would like to prove to us Obama is cloned. Respondent's medical chart reflects he told a clinical director in Iroquois County he thinks President Obama is the "beast" and respondent and Obama will battle with respondent winning the battle.

Respondent approached the Watseka police department to let them know of his beliefs and the need for him to meet the President. This information was then sent to the United States Secret Service. From the medical records, Dr. Kripakaran believed the Secret Service interviewed respondent and respondent signed a release for the Service to be able to talk to Kripakaran.

It was the opinion of Dr. Kripakaran respondent can become agitated and threatening because of his delusions. As an example, Dr. Kripakaran noted she spent a great deal of time with respondent as he expressed his beliefs to her. When she opined he was delusional, respondent became agitated and stated "I will kick your ass down there to hell." Dr. Kripakaran felt threatened and intimidated. She concluded respondent would reasonably be expected to threaten people who did not believe his delusions.

Dr. Kripakaran believed respondent was in need of hospitalization to prevent harm to others, although she admitted on cross-examination there have been no other incidents of threatening behavior by respondent nor had he physically harmed any of his peers. A treatment plan had been formulated and was admitted into evidence along with the social investigation and psychiatric history of respondent. Dr. Kripakaran stated a 90-day hospitalization was the least-restrictive treatment for respondent at the present time.

Respondent testified he was originally from California but had lived in Illinois most of his life. When asked where he would live if not hospitalized, he stated "maybe in Tennessee, wherever. I'm kind of free-wheeling." Respondent stated he could support himself by giving guitar lessons.

Respondent admitted a previous hospitalization in Madden psychiatric facility after being "attacked by a knife." He was not aware of any diagnosis at the time of his previous hospitalization. He did not think he had any mental illness, let alone schizophrenia. Respondent claimed he would not become threatening if his beliefs were challenged. He stated Dr. Kripakaran caught him on a bad day when he threatened her. When asked if he told the doctor he would kick her ass, respondent admitted he did although he denied a desire to cause her physical harm or pain.

During his testimony, respondent referred to President Obama's "body chip" in his forehead but stated he had no plan

- 4 -

formulated to cause him physical harm. He had been contacting sheriff's departments all across the country to have the police approach the president on this subject. Respondent also shared with the court his beliefs as the law of God and an explanation of symbols on the back of the dollar bill.

The trial court found respondent was mentally ill and as a result of his illness was reasonably expected to inflict physical harm upon himself or others in the near future. The court found he needed to be hospitalized at a Department of Human Services facility for a period not to exceed 90 days. The court specifically found as a result of a challenge to his personal beliefs, respondent's threatening conduct placed others in a reasonable expectation of being harmed despite his denial of an intent to harm. The court found respondent should be hospitalized because he thinks the President poses a threat as a result of a "chip" implanted in him. Throughout the court's summary of his findings, respondent interrupted him, exclaiming he was King James and a prophet.

Respondent appeals.

## II. ANALYSIS

On appeal, respondent argues the trial court's order should be reversed because (1) the petition to involuntarily admit him failed to strictly comply with section 3-601(b)(2) of the Code, requiring a petition to set forth the names and addresses of a respondent's family members or guardian or explain why this information could not be obtained; and (2) the court

- 5 -

violated his constitutional and statutory rights to treatment in the least-restrictive environment.

## A. Mootness

Both parties agree the issues raised by respondent on appeal are moot. Respondent's commitment order, entered April 2, 2010, was limited in duration to 90 days. In this case as in In re Barbara H., 183 Ill. 2d 482, 490, 702 N.E.2d 555, 559 (1998), respondent could be held involuntarily only if a new petition were filed and a new hearing conducted. Irrespective of whether the commitment order was valid, it no longer can serve as the basis for adverse action against respondent. Barbara H., 183 Ill. 2d at 490, 702 N.E.2d at 559. Any decision on the merits would result in an advisory opinion. We do not render advisory opinions or decide moot questions. Barbara H., 183 Ill. 2d at 490-91, 702 N.E.2d at 559. Respondent argues any or all of three exceptions to the mootness doctrine apply: (1) capable of repetition but avoiding review; (2) collateral consequences; and (3) public interest.

### 1. Capable of Repetition but Avoiding Review

Where a case involves an event of short duration capable of repetition, yet evading review, Illinois courts have held it may qualify for review even if otherwise moot. In re A Minor, 127 Ill. 2d 247, 258, 537 N.E.2d 292, 296-97 (1989). Two criteria must be met in order to receive the benefit of this exception: "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation and (2) there

- 6 -

is a reasonable expectation that the same complaining party would be subjected to the same action again." Barbara H., 183 Ill. 2d at 491, 702 N.E.2d at 559.

The order was limited to 90 days, and there is no question it could not have been fully litigated prior to its expiration. The only question to be determined with regard to this exception is whether there is a reasonable expectation respondent will be subject personally to the same action again. In re Alfred H.H., 233 Ill. 2d 345, 358-59, 910 N.E.2d 74, 82 (2009).

Respondent acknowledges our supreme court has found where a claim on appeal raises the issue of sufficient evidence to order involuntary commitment, it does not meet the requirement of "same action" where a respondent disputes whether the specific facts established at his hearing were sufficient to find he was a danger to himself or to others and, thus, subject to involuntary commitment. The court stated "[t]here is no clear indication of how a resolution of this issue could be of use to respondent in future litigation." Alfred H.H., 233 Ill. 2d at 360, 910 N.E.2d at 83.

Respondent argues he has raised constitutional and statutory interpretation arguments, which he contends the court in Alfred H.H. intimates would be sufficient to overcome the mootness doctrine as "capable of repetition yet avoiding review." See Alfred H.H., 233 Ill. 2d at 360, 910 N.E.2d at 83. Respondent argues he has raised issues that challenge the State's and

the trial court's compliance with his due-process rights to both proper pleadings and treatment in the least-restrictive environment. He contends the court is likely to again commit the same errors in any future mental-health-commitment cases he might face.

As noted in Alfred H.H., the respondent's burden when arguing the exception of capable of repetition but avoiding review is to show there is a substantial likelihood the issue presented by him, and resolution thereof, would have some bearing on a similar issue in a later case. Alfred H.H., 233 Ill. 2d at 360, 910 N.E.2d at 83. Respondent has not met that burden. The issue of whether hospitalization was the proper treatment alternative for respondent is clearly a fact-based determination by the trial court even though he has tried to argue it as a constitutional issue. The order entered in this case was based on respondent's condition at the time of the order and any future proceedings would entail a fresh evaluation of his particular condition existing at that time. See Alfred H.H., 233 Ill. 2d at 358, 910 N.E.2d at 82. Any determination as to the sufficiency of the evidence would not be likely to have any impact on future litigation.

There was a failure to strictly comply with the Code requiring a petition to set forth the names and addresses of a respondent's family members or guardian. The interpretation of the statute and the constitutional requirements where such a failure occurs have already been clearly determined by prior

courts.  See <u>In re Tommy B.</u>, 372 Ill. App. 3d 677, 684, 867 N.E.2d 1212, 1219 (2007); <u>In re Louis S.</u>, 361 Ill. App. 3d 763, 768, 838 N.E.2d 218, 222 (2005); <u>In re Robinson</u>, 287 Ill. App. 3d 1088, 1095, 679 N.E.2d 818, 823 (1997).  No further clarification of what the statute requires is necessary.  Though the petition lacks strict adherence to the statute, prior case law has established this error is harmless.

### 2. <u>Collateral Consequences</u>

This exception applies where the respondent could be plagued in the future by the adjudication at issue.  <u>Alfred H.H.</u>, 233 Ill. 2d at 361, 910 N.E.2d at 83.  Respondent argues if faced with civil commitment again, having once been judged mentally ill and in need of commitment, he would now have a history of mental illness which would work against him.  He notes the supreme court recognized in <u>Alfred H.H.</u> "a host of potential legal benefits" accrue if his commitment is reversed.  <u>Alfred H.H.</u>, 233 Ill. 2d at 362, 910 N.E.2d at 84.  "For instance, a reversal could provide a basis for a motion <u>in</u> <u>limine</u> that would prohibit any mention of the hospitalization during the course of another proceeding."  <u>Alfred H.H.</u>, 233 Ill. 2d at 362, 910 N.E.2d at 84.  However, if a respondent had previous involuntary commitments or felony convictions, collateral consequences would have already attached and are not attributable to the commitment at issue.  Thus, the collateral-consequences exception would not apply.  See <u>Alfred H.H.</u>, 233 Ill. 2d at 362-63, 910 N.E.2d at 84.

Respondent and the State argue over whether the testi-

mony by respondent he was previously hospitalized in a mental-health facility constitutes a situation where collateral consequences have already attached. The record does not indicate whether this hospitalization was voluntary or involuntary and what diagnosis of respondent may have been made. However, the fact the Secret Service was notified and interviewed respondent prior to the beginning of these commitment proceedings means collateral consequences have already attached. The Secret Service will likely continue to monitor respondent's whereabouts. In fact, in the comprehensive psychiatric report admitted into evidence, it is noted the Secret Service asked to be notified when respondent is discharged. Even if the commitment order is reversed, respondent will remain of interest to the Secret Service. The descriptions of his behavior in this case, his earlier hospitalization, and the scrutiny of the Secret Service are now part of respondent's history.

### 3. Public Interest

This exception applies where otherwise moot cases present questions of public importance likely to recur. Under this exception, a court may consider a moot case where "(1) the question presented is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) there is a likelihood of future recurrence of the question." Alfred H.H., 233 Ill. 2d at 355, 910 N.E.2d at 80. The exception is to be "'narrowly construed and requires a clear showing of each criterion.' [Citation.]" Alfred H.H., 233

Ill. 2d at 355-56, 910 N.E.2d at 80.

Involuntary mental-health commitment proceedings are matters of public interest as provisions of the Code provide safeguards to minimize the possibility of confinement and its attendant consequences for individuals whose confinement is unnecessary for anyone's protection. In re Stephenson, 67 Ill. 2d 544, 550, 367 N.E.2d 1273, 1274-75 (1977). Questions of strict compliance with the Code's statutory procedures have been found to involve matters of public importance to which the public-interest mootness exception applies. In re Andrew B., 386 Ill. App. 3d 337, 340, 896 N.E.2d 1067, 1070 (2008), citing In re A.W., 381 Ill. App. 3d 950, 955, 887 N.E.2d 831, 836 (2008).

Respondent argues there is a need for a determination for future guidance of public officials on the issues of the propriety of his commitment petition and whether he was ordered to the least-restrictive appropriate treatment. Analysis of these issues would guide future courts and parties in case involving sections 3-601 and 3-811 of the Code. 405 ILCS 5/3-601 (West 2008); 405 ILCS 5/3-811 (West Supp. 2009).

The challenge in the underlying appeal of the sufficiency of the evidence as to the least-restrictive treatment alternative does not meet the public-interest exception. See Alfred H.H., 233 Ill. 2d at 356-57, 910 N.E.2d at 81. The facts in regard to respondent's case are specific to him and do not involve anyone else; thus, they are not of a public nature requiring guidance be given to public officials dealing with those

- 11 -

facts.  Additionally, there is no substantial likelihood the facts giving rise to respondent's claims were likely to recur either as to him in future proceedings or to anyone else.  See Alfred H.H., 233 Ill. 2d at 358, 910 N.E.2d at 82.  Any future commitment proceedings would be based on then-current conditions.

In regard to the failure to strictly comply with the petition pleading requirement of section 3-601 of the Code (405 ILCS 5/3-601 (West 2008)), as we have previously noted, this issue already has been determined by other courts and, therefore, there is no need for an additional determination for the future guidance of public officials.

We have found respondent's appeal is moot and none of the exceptions he cites to the mootness doctrine apply.  We need not address the substantive issues he has raised but choose to briefly note no reversible errors occurred.

B. Strict Compliance With Section 3-601(b)(2) of the Code

A respondent subject to involuntary commitment should not be allowed to participate in a hearing on the merits only to obtain a new hearing by complaining of a procedural defect.  Such a respondent forfeits any objection when not made at trial.  See In re Phillip E., 385 Ill. App. 3d 278, 283, 895 N.E.2d 33, 39-40 (2008); In re Luker, 255 Ill. App. 3d 367, 370, 627 N.E.2d 1166, 1168 (1993).

Second, although strict compliance is generally required in involuntary-commitment proceedings, reversal is not required for failure to strictly comply with statutory procedures

- 12 -

unless respondent suffered prejudice. Louis S., 361 Ill. App. 3d at 768, 838 N.E.2d at 222. Specifically, failure to strictly comply with section 3-601(b)(2) does not warrant reversal unless respondent suffered prejudice. Tommy B., 372 Ill. App. 3d at 684, 867 N.E.2d at 1219. In addition, failure to strictly comply with section 3-601(b)(2) does not require reversal where a respondent fails to object to alleged errors in the trial court and was not prejudiced. Robinson, 287 Ill. App. 3d at 1095, 679 N.E.2d at 823.

Respondent failed to establish both he objected to the error at trial and he suffered prejudice. The comprehensive report indicated respondent knew nothing about his family other than his mother lived in Costa Rica and he had a sister with whom he no longer spoke. Respondent does not suggest how he might have been prejudiced or what the State could have done to contact these vaguely referenced family members.

C. Least-Restrictive Treatment Alternative

Once an individual has been found subject to involuntary admission, the trial court must decide the individual's disposition, i.e., the specific setting to which he will be committed. 405 ILCS 5/3-810 (West 2008); 405 ILCS 5/3-811 (West Supp. 2009). Respondent attempts to couch his objections to the court's ordering him to involuntary hospitalization as a constitutional issue. He argues, to comply with substantive due-process requirements, courts must order committed individuals to be placed in the least-restrictive setting for treatment. Covington

- 13 -

v. Harris, 419 F.2d 617, 623 (D.C. Cir. 1969). Respondent argues more than just the treating physician's opinion is necessary to commit someone to the most- restrictive setting. The opinion must be supported by evidence. In re Luttrell, 261 Ill. App. 3d 221, 227, 633 N.E.2d 74, 78 (1994).

Here, the evidence indicated respondent's threatening behavior would reasonably place another in fear for his personal safety. Respondent told Dr. Kripakaran he would "kick [her] ass down to hell." Although respondent claims he did not mean it, his words put Dr. Kripakaran in fear for her personal safety.

Where a trial court is justified in finding a respondent in need of hospitalization, it is not error for the court to fail to give consideration to other placements. People v. Sharkey, 60 Ill. App. 3d 257, 265, 376 N.E.2d 464, 469 (1978). The Code does not state a court must make a specific finding a certain treatment is the least-restrictive alternative. In re Friberg, 249 Ill. App. 3d 86, 93, 617 N.E.2d 1327, 1332 (1993). A court's ruling is proper if the record provides the basis for the court to determine involuntary hospitalization is the least-restrictive alternative. See Friberg, 249 Ill. App. 3d at 93, 617 N.E.2d at 1332.

Although he denied being mentally ill at trial, on appeal respondent does not argue he was not mentally ill. His comprehensive evaluation shows respondent was held in the Iroquois County jail because of threats he made against President Obama. He was interviewed by the Secret Service and because of

- 14 -

his strong delusional beliefs referred for psychiatric evaluation. He is homeless and unemployed. Although he testified at trial he lived most of his life in Illinois, during his evaluation, respondent told Dr. Kripakaran he is a wanderer and was trying to get to Minnesota from California when he stopped in Watseka. He does not believe he has a mental illness and has no support group. Respondent has never been married or had any children. He has no income. This record supports the trial court's finding respondent required hospitalization and no reasonable alternative existed.

We choose to comment on the responsibility of the participants in respondent's hearing. The State filed a petition with a portion of the petition left blank. Respondent's counsel failed to comment on the blank section of the petition. The trial judge did not point out the failure to fill in that section. We are mindful of busy court calendars, overburdened counsel and judge, and increased mental-health filings. We also understand these are difficult cases. That cannot be an excuse. All the participants bear a responsibility, perhaps a special responsibility, in a mental-health case, to do their best to provide a process that will guarantee a respondent is treated fairly.

Everyone in the courtroom may have known the likely result of the hearing, and knew in advance there were no family members to be contacted or to speak for respondent. That is not a criticism--it is a comment on human nature. After dealing with

- 15 -

respondent, listening to respondent, and understanding the limited options available, it is understandable the participants might decide everyone wanted what was best for respondent and procedural niceties need not be observed.

That is a fatal flaw in mental-health cases. The participants sometimes act as if such cases do not involve "real" law. Pleadings should be filled out in compliance with the statute because such cases are quite real. We lock up delusional, societal outcasts because we do not want them to harm themselves or others.

If we are to take away liberty, label individuals, and place them in institutions, we must improve the process. The blank could have been filled in quickly with the information respondent provided--his mother lives in Costa Rica and he has no contact with her or a sister. That information would not assist in deciding the case, but by providing it, the State would be acknowledging that requirement of the statute.

In a similar vein, asking Dr. Kripakaran why hospitalization was the least-restrictive alternative would show an understanding that hospitalization is the last resort, not the first, even if it seems to be a forgone conclusion. The record supports the trial court's finding, but a neutral court watcher who carefully examined the pleadings and observed the hearing would conclude everyone involved took shortcuts--not because they are wicked or uncaring, but because all they see is just another mental-health case, the usual respondent in the usual place. The

system can and must do better.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

TURNER, and POPE, JJ., concur.