# Illinois Official Reports

## Appellate Court

***Chester Bross Construction Co. v. Department of Transportation*,
2014 IL App (4th) 130164**

| | |
|---|---|
| Appellate Court Caption | CHESTER BROSS CONSTRUCTION COMPANY, Plaintiff-Appellant, v. THE DEPARTMENT OF TRANSPORTATION, an Administrative Agency of the State of Illinois; ANNE L. SCHNEIDER, in Her Official Capacity as Secretary; BILL GRUNLOH, in His Official Capacity as Chief Procurement Officer; and THOMAS R. WETZLER, in His Official Capacity as Hearing Officer, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-13-0164 |
| Filed | March 27, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A trial court has authority to review a discretionary administrative decision via a writ of *certiorari* if, in lieu of an express provision for review in the statute conferring power on the agency, the exercise of that discretion is arbitrary and capricious and if the statute contains meaningful standards by which the court can judge the agency's use of discretion; however, here the plaintiff construction company's case was moot, because its suspension resulting from the Illinois Department of Transportation's decision had expired and neither the collateral-consequences nor the public-interest exception to mootness was met. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 12-MR-895; the Hon. John Schmidt, Judge, presiding. |
| Judgment | Appeal dismissed. |

Counsel on
Appeal

Michael Resis, of SmithAmundsen LLC, of Chicago, and Jeffrey A. Risch, Ellen L. Green (argued), and Jonathon D. Hoag, all of SmithAmundsen LLC, of St. Charles, for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Christopher M.R. Turner (argued), Assistant Attorney General, of counsel), for appellees.

Panel

JUSTICE POPE delivered the judgment of the court, with opinion. Presiding Justice Appleton and Justice Knecht concurred in the judgment and opinion.

## OPINION

¶ 1     On October 23, 2012, plaintiff, Chester Bross Construction Company (Chester Bross), filed a petition for writ of *certiorari* for administrative review against defendants, the Department of Transportation, often referred to as IDOT, IDOT Secretary Anne L. Schneider, IDOT chief procurement officer (CPO) Bill Grunloh, and IDOT hearing officer Thomas R. Wetzler. Plaintiff sought review of CPO Grunloh's decision to suspend plaintiff from participating on any contracts awarded by or requiring approval or concurrence of IDOT for two years. The period of plaintiff's interim suspension was deducted from the two-year suspension. On January 22, 2013, the trial court granted defendants' motion to quash plaintiff's writ of *certiorari*. Plaintiff appeals, making the following arguments: (1) the trial court erred in quashing its petition for writ of *certiorari*; (2) defendants lacked adequate evidence of a material misrepresentation by plaintiff to support the suspension; and (3) defendants erred in suspending plaintiff based on rules that were not promulgated in accordance with the Illinois Administrative Procedure Act (5 ILCS 100/1-1 to 15-10 (West 2008)). Defendants argue plaintiff's appeal is moot because plaintiff's suspension has expired. We find the trial court erred in quashing the writ on the basis it had no authority to entertain the action, but we find the ultimate issue moot and dismiss this appeal.

¶ 2                                    I. BACKGROUND

¶ 3     In its petition for writ of *certiorari* for administrative review, plaintiff alleged it was the lowest responsible bidder on multiple IDOT projects. After two unions filed bid protests with IDOT alleging plaintiff was not in compliance with the apprenticeship mandate of the Illinois Procurement Code (Procurement Code) (see 30 ILCS 500/30-22(6) (West 2008)), plaintiff responded with evidence it participated in apprenticeship programs approved by the United States Department of Labor through its membership in Associated Builders and Contractors of Illinois (ABC). On July 6, 2010, IDOT denied the bid protests, stating, "Chester Bross participates in apprenticeship programs as a member of Associated Builders and Contractors."

¶ 4    In August 2010, IDOT conducted an internal audit of plaintiff to determine whether plaintiff was in compliance with the apprenticeship mandate found in the Procurement Code (30 ILCS 500/30-22(6) (West 2008)). The audit noted a certified transcript of payroll created pursuant to the Prevailing Wage Act (820 ILCS 130/0.01 to 12 (West 2008)) for Adams County project No. 72D14 showed that three of plaintiff's workers were paid the prevailing wage for "laborer" during one of the pay periods on that project. Plaintiff had told IDOT it would not be using "laborers" on that project.

¶ 5    Plaintiff alleged each of these three workers should have been classified as "operator" instead of "laborer." According to its petition, plaintiff discovered this "clerical error" in September 2010 and immediately corrected the mistake by revising the certified payroll report and paying the difference in wages to the three workers. Plaintiff alleged it did not become aware of the internal audit until June 8, 2011, when IDOT issued a notice of interim suspension to plaintiff. According to plaintiff, IDOT's interim suspension was based solely on the certified payroll report.

¶ 6    On June 17, 2011, plaintiff requested a hearing and denied all the material allegations found in IDOT's notice. Plaintiff provided evidence the payroll report in question had been corrected by plaintiff before plaintiff knew IDOT had questions about the incorrect certified payroll report. IDOT then issued an amended notice indicating plaintiff did not have documentation referenced in the federal regulations to show actual participation in applicable apprenticeship and training programs approved by and registered with the United States Department of Labor's Bureau of Apprenticeship and Training.

¶ 7    The hearing began on August 25, 2011, and took the "better part of seven days," finally concluding on October 14, 2011. Plaintiff alleged it was denied the opportunity to call "material witnesses" from the Illinois Department of Labor at the administrative hearing even though IDOT was relying on information related to the Prevailing Wage Act to support its allegation plaintiff did not comply with certain apprenticeship mandates found in the Procurement Code. Plaintiff also alleged it was denied the opportunity to call material witnesses from IDOT who were directly involved in issuing plaintiff the amended notice of suspension and continuing interim suspension.

¶ 8    On June 15, 2012, IDOT hearing officer Wetzler issued a recommended decision to CPO Grunloh. According to the recommended decision, the charges against plaintiff related to IDOT project No. 72D14 in Adams County. The hearing officer began his analysis by stating IDOT's burden of establishing "adequate evidence" to justify the suspension did not constitute a high threshold. The hearing officer stated IDOT had the burden of proving the essential elements of the case with information sufficient to support the reasonable belief plaintiff "provided documents that it would not be using laborers on the project in question" but did use laborers, and plaintiff claimed it participated in an apprenticeship and training program for the trade of operating engineer when it in fact did not.

¶ 9    The hearing officer found IDOT sustained its burden of proof by producing facts which established a *prima facie* case plaintiff violated the "Responsible Bidder" provisions of the Procurement Code and applicable regulations. The hearing officer pointed to the certified payroll report indicating plaintiff paid three individuals as laborers on project No. 72D14. Further, the hearing officer noted:

> "The record further reflects that [plaintiff] claims it 'participated' in an apprenticeship program for the trade of Heavy Equipment Operator through its membership in [ABC] which had received certification from the [United States Department of Labor] of

- 3 -

registration of apprenticeship programs for Heavy Equipment Operator. [Plaintiff] further alleged in a letter dated June 10, 2010[,] that it had employees pre-registered for the next apprenticeship program for Heavy Equipment Operator, but failed to provide any evidence, as requested in discovery as to Count I, of ever having had any employee actually enrolled in much less having completed a training program for Heavy Equipment Operator. Testimony of [ABC] president Alicia Martin as well as admission of Respondent's [chief financial officer (CFO)] Mark Bross, confirms that at all times relevant to this proceeding, Bross had no individual employees who were registered with, enrolled in or had completed the [ABC] apprenticeship course for Heavy Equipment Operators."

The hearing officer noted plaintiff may have inadvertently told the truth with its certified payroll document showing it had used laborers on the Adams County project contrary to its representations to IDOT. Moreover, there was no evidence presented by plaintiff of checks paid to two of the three "laborers" for the difference in pay between "laborer" and "operator." In addition, the hearing officer held "[m]ere membership in an organization which has an apprenticeship training program approved by and registered with the United States Department of Labor's Bureau of Apprenticeship and Training does not constitute 'participation' under the Responsible Bidder Provisions of the Illinois Procurement Code." The hearing officer recommended a five-year suspension.

¶ 10    On July 5, 2012, CPO Grunloh adopted the findings of fact and conclusions of law made by the hearing officer. However, the CPO did not find significant aggravating factors to justify a suspension beyond two years. The period of plaintiff's interim suspension was deducted from the two-year suspension period.

¶ 11    In its petition for writ of *certiorari* filed August 8, 2012, plaintiff alleged the findings of fact and conclusions of law adopted by the CPO were against the manifest weight of the evidence and contrary to law. According to plaintiff, the CPO's final determination was "contrary to law, arbitrary and capricious, and against the manifest weight of the evidence."

¶ 12    On December 17, 2012, defendants filed a brief in support of IDOT's decision. Defendants argued the trial court should not step into the executive branch's procurement process and review a state agency's decision not to enter into contracts with a particular company, specifically the CPO's decision to suspend plaintiff from bidding on IDOT construction projects for two years. Defendants argued plaintiff had no right to a state contract and IDOT's CPO has complete discretion in determining whether companies may bid on construction projects. Further, defendants argued "the doctrine of separation of powers forbids the courts from reviewing discretionary acts of officers of the executive branch of government, including the discretionary act of the CPO involved in this case." Defendants argued a writ of *certiorari* should not lie in this case because "(1) Plaintiff has no right to a state contract; (2) the Court should not substitute its judgment for a discretionary, executive decision regarding contracts; and (3) there are no meaningful standards for the Court to conduct a review."

¶ 13    On December 24, 2012, plaintiff filed a reply brief in support of its petition, arguing this is a proper case for the trial court to review under a common-law writ of *certiorari*.

¶ 14    On January 22, 2013, after hearing arguments by the parties, the trial court ruled:

"The question isn't whether or not I agree or disagree with what the hearing officer did. The first question I have to get to is do I have a right to be here? Do I have a right to hear this case? And if I cross that threshold, then I move on to the next one. The case

law is abundantly clear that this is an extraordinary remedy to be granted by the Court. Because what a writ of *certiorari*, we all know it, I'll state it for the record, is the Court stepping in to a co-equal branch of government saying do something different or act in this manner. It's the law. And that is only done when it's clear–abundantly clear that there is a statutory duty to act in such a manner, as proposed by the Constitution or a statute.

In this case, the plaintiffs passionately and they well argued–well argued of these errors that were made and this–the incorrect ways of the Department. But they're discretionary acts. Every single act they argue about, in the Court's mind, is a discretionary act. All of those things they complain of are accounts of discretion invested in the executive.

The Court is not going to substitute its judgment for that of the procurement officer who is the arm of the executive branch. What you're asking me to get involved in, the Court doesn't believe they have the authority to do. I'm just not going to do it. I don't need to go any farther than that. I don't have the authority to make the decision. It's discretionary on the part of the Department of Transportation. The writ of [*certiorari*] is quashed."

That same day, the trial court entered the following docket entry:

"Court has read the briefs of counsel, reviewed the record and heard oral arguments. Defendant's Motion to Quash Writ of *Certiorari* is allowed. Court finds the authority to grant a state contract is a discretionary act vested in the Executive branch of the government. Writs of *Certiorari* are not appropriate where act is discretionary. The Plaintiff has no right to a state contract. To grant the Writ of *Certiorari* would have the Courts involved in the day[-]to[-]day aspects of granting and denying state contracts. The Court will not substitute its judgment for that of the executive state agency."

¶ 15      This appeal followed.

¶ 16                              II. ANALYSIS

¶ 17      Defendants argue this case is moot because plaintiff's suspension expired on June 8, 2013, prior to plaintiff filing its opening brief in this case. Plaintiff is again eligible to participate in IDOT contracts, which is the relief it requested in its writ of *certiorari*. "An issue is moot if no actual controversy exists or where events occur which make it impossible for the court to grant effectual relief." *Dixon v. Chicago & North Western Transportation Co.*, 151 Ill. 2d 108, 116, 601 N.E.2d 704, 708 (1992). Appellate courts generally will not consider moot questions, provide advisory opinions, or analyze issues where the resolution of that issue will not affect the result in a case. *In re Alfred H.H.*, 233 Ill. 2d 345, 351, 910 N.E.2d 74, 78 (2009).

¶ 18      While conceding the expiration of the suspension technically renders its request for relief from the suspension moot, plaintiff argues this case falls under exceptions to the mootness doctrine. Plaintiff first argues we should review this case under the public-interest exception to mootness because the trial court held it did not have any authority to review the suspension decision. Plaintiff next argues we should review this case under the collateral-consequences exception to the mootness doctrine because plaintiff will be plagued by a finding "it lacked business integrity and honesty, even if the two-year suspension imposed by the CPO in its July 2012 final determination has expired."

¶ 19    We first address plaintiff's argument we should review this case under the public-interest exception. The public-interest exception permits review of otherwise moot cases when (1) the question is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officials; and (3) the question is likely to recur in the future. *Id.* at 355, 910 N.E.2d at 80. The public-interest exception must be narrowly construed and requires a clear showing of each criterion. *Id.* at 355-56, 910 N.E.2d at 80. This case does not fall within the public-interest exception. Plaintiff cannot make a clear showing of all three criteria.

¶ 20    Plaintiff's argument focuses on the trial court's refusal to even review the CPO's suspension decision. According to plaintiff, "Review by this [c]ourt would clarify that a decision by IDOT to suspend a contractor is subject to judicial review under a writ of *certiorari*." We do not believe any clarification is necessary. We find existing case law, statutes, and administrative regulations provide trial courts sufficient guidance on this issue. The trial court erred in refusing to consider whether IDOT's decision to suspend plaintiff was arbitrary, capricious, or against the manifest weight of the evidence. If cause for suspension was not established, the CPO had no discretion to suspend plaintiff. See 30 ILCS 500/50-65 (West 2012); see also 44 Ill. Adm. Code 6.500 (2011). While the trial court stated several times plaintiff had no right to a state contract, plaintiff's right to a particular contract was not at issue.

¶ 21    The issue here was whether the CPO's decision to suspend plaintiff based on the evidence in this case was arbitrary, capricious, or against the manifest weight of the evidence. IDOT argues this is a distinction without a difference. According to its brief:

> "By suspending a contractor, however, the CPO similarly decides to not award future IDOT contracts to that contractor, but for a specified period of time. In either circumstance, the CPO does not award the contract because he has determined that the contractor is not a responsible bidder or that awarding it the contract otherwise is not in the best interests of the State. The contractor still has no right or entitlement to the IDOT contract, and the legislature has granted IDOT with broad freedom 'to determine those with whom it will deal.' *Perkins v. Lukens Steel Co.*, 310 U.S. 113, 127 (1940)."

The United States Supreme Court's decision in *Perkins* clearly has nothing to do with any authority the Illinois General Assembly has given IDOT with regard to suspending contractors.

¶ 22    Existing case law clearly supports someone in plaintiff's position having an IDOT suspension decision reviewed in the trial court via a writ of *certiorari*. According to our supreme court:

> "A common law writ of *certiorari* is a general method for obtaining circuit court review of administrative actions when the act conferring power on the agency does not expressly adopt the Administrative Review Law and provides for no other form of review. [Citation.] *** Under the Administrative Review Law, courts generally do not interfere with an agency's discretionary authority unless the exercise of that discretion is arbitrary and capricious [citation] or the agency action is against the manifest weight of the evidence [citation]. ***
>        ***
>
> While most agency actions are presumed reviewable, no presumption arises if there is a statutory bar to review or if statutory language commits the agency decision to unreviewable agency discretion. [Citation.] Factors to consider in determining whether statutory language precludes judicial review include the statute's 'express language, the structure of the statutory scheme, its objectives, its legislative history, and the

nature of the administrative action involved.' [Citation.] 'Of particular importance is whether the statute contains standards, goals, or criteria by which a court may evaluate agency action.' [Citation.] Accordingly, judicial review is precluded if 'the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.' " *Hanrahan v. Williams*, 174 Ill. 2d 268, 272-74, 673 N.E.2d 251, 253-54 (1996).

¶ 23    Pursuant to our supreme court's decision in *Hanrahan* and the applicable sections of the Procurement Code and Illinois Administrative Code, a trial court has the authority to review an administrative decision finding cause existed for IDOT's CPO to suspend a contractor. Section 20-70 of the Procurement Code (30 ILCS 500/20-70 (West 2012)) states, "Except as otherwise provided in this Code, determinations made by a chief procurement officer, State purchasing officer, or a purchasing agency under this Code are final and conclusive *unless* they are clearly erroneous, arbitrary, capricious, or contrary to law." (Emphasis added.) Clearly, the General Assembly would not have included the language "unless they are clearly erroneous, arbitrary, capricious, or contrary to law" if it intended the CPO's decisions to be completely unreviewable.

¶ 24    Further, section 50-65 of the Procurement Code (30 ILCS 500/50-65 (West 2012)) limits the circumstances under which a CPO may suspend a contractor or subcontractor, stating:

> "Any contractor or subcontractor may be suspended for violation of this Code or for failure to conform to specifications or terms of delivery. *Suspension shall be for cause* and may be for a period of up to 10 years at the discretion of the applicable chief procurement officer. Contractors or subcontractors may be debarred in accordance with rules promulgated by the chief procurement officer or as otherwise provided by law." (Emphasis added.) 30 ILCS 500/50-65 (West 2012).

While this statute gives the CPO discretion with regard to whether a contractor should actually be suspended and the length of a suspension, the CPO does not have unfettered discretion to suspend a contractor. Much like a trial court may not exercise its discretion in sentencing a criminal defendant before the defendant is found guilty beyond a reasonable doubt, the CPO can only exercise his discretion with regard to a suspension decision if cause for the suspension has been established. In other words, the CPO had no discretion to suspend plaintiff absent "cause."

¶ 25    Section 6.500 of title 44 of the Illinois Administrative Code (44 Ill. Adm. Code 6.500 (2011)), which deals with the suspension of contractors by IDOT's CPO, states in part: "Suspension is a discretionary action imposed in accordance with this Part to serve the public interest and to implement this policy. *It may be imposed only for the causes and in accordance with the procedures set forth in this Subpart*." (Emphasis added.) Further, sections 6.510 and 6.520 of title 44 of the Illinois Administrative Code (44 Ill. Adm. Code 6.510, 6.520 (2011)) provide meaningful standards by which to judge whether IDOT established cause for a suspension. Section 6.510 states, in part, "The CPO may suspend a contractor or subcontractor from participation on any contract or subcontract awarded by or requiring approval or concurrence of the Department upon a determination by the CPO *based upon adequate evidence that the contractor or subcontractor has engaged in conduct proscribed by Section 6.520 of this Subpart*." (Emphasis added.) 44 Ill. Adm. Code 6.510 (2011). Section 6.520 states, "A contractor or subcontractor may be suspended or debarred from participation due to acts or omissions that indicate that the contractor or subcontractor lacks integrity and honesty in the conduct of business or the performance of contracts." 44 Ill. Adm. Code 6.520 (2011).

Section 6.520 then provides a nonexclusive list of acts or omissions that might indicate the lack of business integrity and honesty. 44 Ill. Adm. Code 6.520(a) to (f) (2011).

¶ 26 Based on the statutes and administrative regulations discussed above, the trial court should have reviewed whether IDOT's decision to suspend plaintiff was arbitrary, capricious, or contrary to law. It does not appear either the hearing officer or IDOT's CPO believed the CPO had the discretion to suspend a contractor without cause.

¶ 27 While the law is clear the trial court had authority to review IDOT's suspension of plaintiff, this appeal does not present a question of a public nature. According to plaintiff, "[t]he question is of a public nature in that any individual or legal entity seeking an IDOT contract may be affected." Plaintiff cites *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 63, 962 N.E.2d 418, to support his claim. However, that case provides no support for plaintiff. Our supreme court found the issue there to be of a public nature because any individual or legal entity in the state could be subject to the law at issue in that case. The same is not true here. As plaintiff's argument makes clear, the question in this case is based on specific evidence and actions involving only plaintiff.

¶ 28 Plaintiff also argues we should review this case under the collateral-consequences exception to the mootness doctrine because IDOT's finding it lacked business integrity and honesty will adversely affect plaintiff in the future. Our supreme court has stated:

"The collateral consequences exception to mootness allows for appellate review, even though a court order or incarceration has ceased, because a plaintiff has ' "suffered, or [is] threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." ' [Citations.] Therefore, '[s]ubsistence of the suit requires *** that continuing "collateral consequences" be either proved or presumed.' " *Alfred H.H.*, 233 Ill. 2d at 361, 910 N.E.2d at 83.

See also *In re James H.*, 405 Ill. App. 3d 897, 902-03, 943 N.E.2d 743, 748-49 (2010). Plaintiff argues the collateral consequences exception applies in this case because it "will be plagued by a finding by IDOT that it lacked business integrity and honesty, even if the two-year suspension imposed by the CPO in its July 2012 final determination has expired." According to plaintiff:

"While Chester Bross is not restricted from bidding on contracts with IDOT or other entities in the future, IDOT cannot seriously argue that a suspension on this basis will have no impact on Chester Bross'[s] ability to procure a contract. IDOT boasts of its broad discretion to reject even the lowest bid, a discretion that is 'not cabined by objective standards so as to permit judicial scrutiny, absent allegations that the decision was the result of fraud, corruption, or illegal action.' [Citation.] Under the circumstances, a threat of actual injury traceable to IDOT can be presumed."

¶ 29 We disagree with this unsupported assertion. As defendants have stated, plaintiff has not demonstrated any specific or concrete legal impact likely to result from the suspension. As a result, we find this case does not fall within the collateral-consequences exception to the mootness doctrine. Any company ever suspended by IDOT, as well as anyone else ever subject to an adverse ruling by a court or administrative body, could make this same argument. If we allowed a moot appeal to go forward under the collateral-consequences exception in cases such as this, the exception would nearly eliminate the mootness doctrine.

¶ 30                                                    III. CONCLUSION

¶ 31    We find the trial court had the authority to review the administrative decision to suspend plaintiff from bidding on IDOT projects for two years. However, the period of suspension has expired, the case is moot, and no exception to the mootness doctrine applies. Consequently, we dismiss the appeal as moot.

¶ 32    Appeal dismissed.