(No. 106616.— )

*In re* ALFRED H.H. (The People of the State of Illinois, Appellee, v. Alfred H.H., Appellant).

*Opinion filed May 21, 2009.*

346

Veronique Baker, Laurel Spahn, Patricia Werner and Cynthia Tracy, of the Illinois Guardianship & Advocacy Commission, of Hines, for appellant.

Lisa Madigan, Attorney General, of Springfield (Michael A. Scodro, Solicitor General, and Richard A.

Huszagh, Assistant Attorney General, of Chicago, of counsel), for the People.

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Kilbride, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

### INTRODUCTION

Respondent, Alfred H.H., was involuntarily committed to McFarland Mental Health Center on May 11, 2007. On May 22, 2007, respondent filed in the circuit court of Sangamon County a timely notice of appeal from his commitment order. Less than a month after his appeal was filed, on June 19, 2007, respondent was discharged from McFarland. Almost one year after the commitment order was entered, the appellate court dismissed respondent's appeal as moot. 379 Ill. App. 3d 1026. Respondent filed a petition for leave to appeal the mootness determination with this court pursuant to Supreme Court Rule 315 (210 Ill. 2d R. 315). We granted respondent's petition and now affirm, on other grounds, the judgment of the appellate court.

### BACKGROUND

Respondent, Alfred H.H., is a 60-year-old man with a history of mental illness. Prior to the present case, respondent had been a recipient of mental health treatment on numerous occasions. Some of these treatments were as a result of involuntary commitments. See *In re Alfred H.*, 358 Ill. App. 3d 784 (2005).[1]

---

[1]Respondent and the State both acknowledge that respondent has been subjected to several involuntary commitments other than

In addition to respondent's history of mental health issues, respondent also has a criminal record. In the mid-1960s, respondent was indicted for and pled guilty to murder. Respondent received a sentence of 20 to 50 years' imprisonment as a result of this plea.

The facts relevant to the present commitment are not in dispute. The State alleges that on or about May 7, 2007, respondent visited a local bank seeking a loan. After respondent left the bank, bank employees contacted the Decatur police department based on statements that respondent allegedly made while at the bank. It was reported that respondent told bank employees that he knew the president of AT&T and that AT&T was bugging his phone. He also stated that "the ADM explosion was caused by 650 gallons of propane." Respondent then allegedly queried, "I've got 1000 gallons in my back yard, what do you think that would do?"

Officer Owens of the Decatur police department was dispatched to the bank, spoke with the bank employees, and thereafter went to respondent's home to speak with him. When Owens arrived, respondent testified, he was sitting in the kitchen with his mother, with whom he lives, having a snack. Respondent agreed to speak with Owens and allegedly stated that he was employed by the Department of Defense and was in radio communication with them. Respondent also confirmed to Owens that he possessed a large quantity of propane.

Based on this interview, in conjunction with the statements that were allegedly made at the bank, Owens executed a petition for involuntary admission and took respondent to St. Mary's Hospital for an evaluation.

the appeal just cited. During oral argument, respondent's attorney stated that respondent has had three appeals of commitments and "has had others." However, as the record is not well developed on this point, this court will simply take notice of a history of prior involuntary commitments.

Dr. Zhang, a psychiatrist who had previously treated respondent on five or six occasions, stated that he examined respondent for purposes of certifying the petition to have him involuntarily committed. Zhang testified that respondent was very agitated and hostile during the interview. Zhang testified that respondent was easily provoked, yelled and screamed, and displayed a disorganized thought process. Zhang further testified that respondent yelled things like "police are all liars" and "I killed." Respondent's behavior during the exam was such that a nurse came into the session having "called Code" because of the noise. At this point, respondent was given forced medication.

On May 11, 2007, a commitment hearing was held on the grounds of McFarland Mental Health Center. Dr. Zhang was the only witness for the State. His testimony was consistent with the foregoing facts. He also stated that it was his expert opinion that respondent was likely to inflict serious harm on himself or another in the near future and that the least restrictive means of treatment was a period of commitment.

Respondent also testified at the hearing. He stated that he had told Owens that he had 550 gallons of propane in his backyard. Respondent said that he knew this because his mother asks him to check the levels regularly and every time he checks the levels he writes the reading on a wall calendar at his home. Respondent also testified that he was an employee of the Department of Defense but that this "would be rather difficult to prove because the Pentagon's going up in smoke."

At the conclusion of the hearing, the trial court judge found that respondent "is a person subject to involuntary admission" and that commitment was "the least restrictive alternative available." Thereafter, the judge entered an order committing respondent for a period not to exceed 90 days and informed respondent of his right to

appeal. The order, entered on May 11, 2007, expired, by its own terms, on August 9, 2007.

On May 22, 2007, respondent filed a notice of appeal with the trial court. Respondent's sole argument before the appellate court was "whether there was clear and convincing evidence" to warrant "respondent's involuntary admission."

On June 19, 2007, less than a month after filing his notice of appeal, respondent was released from McFarland Mental Health Center. On March 11 of the following year, the appellate court ruled that respondent's appeal was moot and should, therefore, be dismissed.

Respondent filed a petition for leave to appeal the appellate court's determination that his appeal was moot. This court granted respondent's petition pursuant to Supreme Court Rule 315 (210 Ill. 2d R. 315). The sole question before this court is whether the appellate court erred in finding respondent's appeal to be moot.

## STANDARD OF REVIEW

Though the underlying issue in this appeal is a question of the sufficiency of the evidence, this claim is not before the court. Instead, the question faced by this court is the correctness of the appellate court's determination that respondent's appeal should be dismissed as moot. This is entirely a question of law. Therefore, our review of this question is de novo. *Blount v. Stroud*, 232 Ill. 2d 302, 308-09 (2009).

## ANALYSIS

Before we begin our analysis, we note that there is no dispute that the underlying case is moot. The commitment order was limited in duration to 90 days and that period has long since passed. In this case, as in *In re Barbara H.*, respondent "could be held involuntarily and forced to take psychotropic medication against [his] will only if a new set of petitions were filed and new hearings

were conducted." *In re Barbara H.*, 183 Ill. 2d 482, 490 (1998). The parties agree on this point. As in *Barbara H.*, whether the commitment order entered against respondent is valid or not, it "can no longer serve as the basis for adverse action against [respondent]." *Barbara H.*, 183 Ill. 2d at 490.

As a general rule, courts in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided. See *In re Mary Ann P.*, 202 Ill. 2d 393, 401 (2002); *Barth v. Reagan*, 139 Ill. 2d 399, 419 (1990). However, the issue presented before this court is not the validity of the underlying judgment or whether the case is moot. Instead, the question is whether there is an exception to the mootness doctrine that would allow the appellate court to consider respondent's claim that the evidence presented at his hearing was insufficient to warrant his commitment.

Respondent, as the appellant, raises five bases to find that the appellate court erred in finding no exception to mootness. First, respondent argues that the Mental Health and Developmental Disabilities Code requires review of his involuntary commitment despite mootness. Second, respondent asserts that the "public interest exception" to the mootness doctrine applies. Respondent's third argument is that the exception for cases that are "capable of repetition yet avoiding review" applies in mental health cases. The fourth argument asserted by respondent is that the "collateral consequences" associated with mental health proceedings compel review. Finally, respondent asserts that general "policy considerations" warrant review of involuntary mental health orders.

## I. The Mental Health Code

Respondent's first argument is that section 3—816 of the Mental Health and Developmental Disabilities Code

(Code) guarantees respondent the right to appeal his involuntary commitment. See 405 ILCS 5/3—816(b) (West 2006). Section 3—816 provides:

"(b) An appeal from a final order may be taken in the same manner as in other civil cases. Upon entry of a final order, the court shall notify the recipient orally and in writing of his or her right to appeal and, if he or she is indigent, of his or her right to a free transcript and counsel. The cost of the transcript shall be paid pursuant to subsection (c) of Section 3—818 and subsection (c) of Section 4—615 of this Code. If the recipient wishes to appeal and is unable to obtain counsel, counsel shall be appointed pursuant to Section 3—805." 405 ILCS 5/3—816(b) (West 2006).

Respondent argues that given the limited duration of the orders entered in mental health cases, these cases will technically be moot before an appeal can be heard. Thus, respondent argues that in order to effectuate the right to appeal provided in section 3—816, this court should adopt a general exception to the mootness doctrine that applies in all mental health cases. In support of his argument, respondent cites this court's language in *Barbara H.* In the portion of the *Barbara H.* decision cited by respondent, this court stated that the duration of involuntary admissions were "far too brief to permit appellate review. *** To apply the mootness doctrine under these circumstances would mean that recipients of involuntary mental health services would be left without any legal recourse for challenging the circuit court's orders." *Barbara H.*, 183 Ill. 2d at 492.[2] Respon-

---

[2] Both in this context and in other portions of respondent's argument, respondent attempts to support his arguments through citation to a number of this court's supervisory orders. We take this opportunity to remind respondent and future litigants that citation to supervisory orders is inappropriate, as "supreme court supervisory orders are nonprecedential." *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 221 (2008).

dent's reliance on the Code and on *Barbara H.* are misplaced.

First, with regard to the Code, nothing in the language of section 3—816 mandates appellate review. Instead, section 3—816 states explicitly that an "appeal from a final order may be taken in the same manner as in other civil cases." 405 ILCS 5/3—816(b) (West 2006). In other civil cases, as in this case, mootness is a factor that the courts will consider in determining whether it is appropriate to decide a given case. See *Berlin v. Sarah Bush Lincoln Health Center*, 179 Ill. 2d 1, 8 (1997) ("this court does not review cases merely to set precedent or guide future litigation").

With regard to respondent's reliance on the quoted text from *Barbara H.*, respondent is also mistaken, as he has overlooked the context in which this court made the foregoing statement. That statement was made during this court's analysis of the mootness exception for cases that are capable of repetition yet avoid review. The quoted text does not provide a basis for a general exception to mootness for all mental health cases, nor does it contain any interpretation of section 3—816 which would provide for a general exception. Instead, the quoted section establishes that in Barbara H.'s specific case the first element of the capable of repetition yet avoiding review exception, that the challenged action is too short in duration to be fully litigated prior to cessation, was present.

It is true, however, that *Barbara H.* recognizes that some appellate court panels have "recognized an exception to [the mootness doctrine] for mental health cases." However, this court never adopted that general exception. Instead, this court stated that whether "our court should embrace that exception has not been briefed or argued by the parties *** and we shall leave the matter for another day." *Barbara H.*, 183 Ill. 2d at 491. We then

went on to perform a case-specific analysis and utilize a case-specific exception to the mootness doctrine to reach the merits of Barbara H.'s appeal. *Barbara H.*, 183 Ill. 2d at 490-92.

The case-by-case approach utilized in *Barbara H.* is consistent with this court's prior precedent. See *In re Splett*, 143 Ill. 2d 225, 228 (1991) (applying the collateral consequences exception); *In re Hays*, 102 Ill. 2d 314, 317 (1984) (also invoking the collateral consequences exception to the mootness doctrine). More importantly, the case-by-case approach of *Barbara H.* is also consistent with subsequent opinions of this court. See *In re Robert S.*, 213 Ill. 2d 30, 45-46 (2004) (invoking the public interest exception to the mootness doctrine in a case involving the involuntary medication of a mental health patient); *In re Mary Ann P.*, 202 Ill. 2d 393, 401-03 (2002) (also applying the public interest exception).

In addition, the "general exception for mental health cases" that this court noted but left unaddressed in *Barbara H.* is not universally followed by the appellate court. See *In re Sciara*, 21 Ill. App. 3d 889 (1974); *People ex rel. Craine v. Boyd*, 41 Ill. App. 3d 538 (1976); *In re Nancy A.*, 342 Ill. App. 3d 355 (2003); *In re Andrew B.*, 386 Ill. App. 3d 337 (2008); *In re Robin C.*, 385 Ill. App. 3d 523 (2008); *In re Phillip E.*, 385 Ill. App. 3d 278 (2008).

In fact, even some of the cases that purport to adopt the "general exception" for mental health cases actually utilize a form of one of the other established exceptions to the mootness doctrine. In *Yiadom v. Kiley*, the appellate court stated that "[g]enerally, the mootness doctrine is not applicable to mental health cases." *Yiadom v. Kiley*, 204 Ill. App. 3d 418, 424-25 (1990), citing *In re Garcia*, 59 Ill. App. 3d 500, 503 (1978). The court in *Yiadom*, however, went on to note that the mootness doctrine "should not be imposed where it would preclude issues

capable of repetition from ever being reviewed on appeal." *Yiadom*, 204 Ill. App. 3d at 425. Thus, the appellate court in *Yiadom* actually adopted the rationale that the appeal was justiciable under the capable of repetition yet avoiding review exception even though it stated that it was adopting the rationale from *Garcia* that mootness is generally inapplicable to mental health cases. A similar analysis is seen in *In re Alex T.*, where the appellate court again stated that the mootness doctrine is generally inapplicable to mental health cases and yet cited the collateral consequences exception as the basis for this "general" inapplicability. *In re Alex T.*, 375 Ill. App. 3d 758, 763-64 (2007). Therefore, despite the "general exception" language contained in a handful of appellate court cases, this "general exception" is really nothing more than a recognition that a specific appeal of a mental health case will usually fall within one of the established exceptions to the mootness doctrine. However, whether a case falls within an established exception to the mootness doctrine is a case-by-case determination. Therefore, there is no *per se* exception to mootness that universally applies to mental health cases.

Because neither the plain language of section 3—816 nor our prior case law mandates appellate review without consideration of mootness, we now direct our attention to the established mootness exceptions respondent raises.

## II. The Public Interest Exception

Respondent's first established exception to the mootness doctrine is the "public interest" exception. The public interest exception allows a court to consider an otherwise moot case when (1) the question presented is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) there is a likelihood of future recurrence of the question. *People ex rel. Wallace v. Labrenz*, 411 Ill. 618, 622 (1952). The "public interest" exception is "nar-

rowly construed and requires a clear showing of each criterion." *In re Marriage of Peters-Farrell*, 216 Ill. 2d 287, 292 (2005) (citing *In re India B.*, 202 Ill. 2d 522, 543 (2002), and *In re Adoption of Walgreen*, 186 Ill. 2d 362, 365 (1999)).

Respondent asserts that the "public interest" exception is met because (1) involuntary mental health proceedings are matters of public interest; (2) sufficiency of the evidence claims have precedential value; and (3) respondent presents a general issue that is likely to recur in another case either with this respondent or with other respondents. Respondent's argument fails on all three bases.

Respondent's appeal does not present an issue of a public nature. Respondent argues that the first criterion is met because involuntary mental health proceedings are matters of public interest. In support of this position, respondent cites *In re Stephenson*, 67 Ill. 2d 544 (1977). Respondent claims that *Stephenson* and the cases cited therein support the proposition that this court "has deemed involuntary mental health proceedings to be matters of public interest." According to respondent, this conclusion only makes sense given that these cases "curtail massive amounts of individual liberty." Respondent's argument on this factor is overly broad.

Though mental health cases do have the potential to deprive respondents of significant liberties, this only addresses the public nature of the class of cases; it does nothing to examine the public nature of the issue presented within this appeal. The question presented in this case is whether the evidence was sufficient to involuntarily commit respondent to a mental health facility. As will be explained more fully below, this question is not of a public nature.

Sufficiency of the evidence claims are inherently case-specific reviews that do not present the kinds of broad

public interest issues presented by the cases to which respondent cites in support of his position. See *Stephenson*, 67 Ill. 2d at 549-50 (deciding that the resolution of existing uncertainties as to the burden of proof borne by the State in involuntary commitment proceedings would "contribute to the efficient operation of our system of justice"); *Labrenz*, 411 Ill. 618 (resolving whether parents' religious objection to their child receiving a life-saving blood transfusion was sufficient to prohibit the State from appointing a guardian to consent to the treatment); *In re Splett*, 143 Ill. 2d 225 (1991) (resolving a question about the statutorily required notice in involuntary commitment cases). Therefore, as we concluded in *Felzak v. Hruby*, "it has not been clearly established that this issue is of sufficient breadth, or has a significant effect on the public as a whole, so as to satisfy the substantial public nature criterion." *Felzak v. Hruby*, 226 Ill. 2d 382, 393 (2007) (refusing to find an exception to mootness to consider a grandparent's attempt to mandate visitation with a grandchild who had achieved the age of majority).

Respondent argues that the second criteria for the "public interest" exception is also met because sufficiency of the evidence cases have precedential value.

It is beyond question that a published opinion regarding the sufficiency of the evidence has value, albeit limited value, to future cases. However, "this court does not review cases merely to set precedent or guide future litigation." *Berlin*, 179 Ill. 2d at 8, citing *Madison Park Bank v. Zagel*, 91 Ill. 2d 231, 235 (1982). If all that was required under this factor was that the opinion could be of value to future litigants, the factor would be so broad as to virtually eliminate the notion of mootness. Instead, the factor requires that the party asserting justiciability show that there is a "need to make an authoritative determination for future guidance of public officers."

*Walgreen*, 186 Ill. 2d at 365. Because this case "does not present a situation where the law is in disarray or there is conflicting precedent," respondent has failed to show that this case meets the second requirement for the "public interest" exception. *Walgreen*, 186 Ill. 2d at 365-66.

Finally, even if the prior two criteria had been met, there is no substantial likelihood that the material facts that give rise to respondent's insufficiency claim are likely to recur either as to him or anyone else. Any future commitment proceedings "must be based on the current condition of the respondent's illness" and the " 'decision to commit must be based upon a fresh evaluation of the respondent's conduct and mental state.' " *In re Houlihan*, 231 Ill. App. 3d 677, 683 (1992), quoting *People v. Nunn*, 108 Ill. App. 3d 169, 174 (1982). Therefore, it is highly unlikely that a determination as to the sufficiency of the evidence in this case would have any impact on future litigation.

### III. The Capable of Repetition Yet Avoiding Review Exception

Respondent's second argument for an established exception to the mootness doctrine is that his case falls within the capable of repetition yet avoiding review exception. This exception has two elements. First, the challenged action must be of a duration too short to be fully litigated prior to its cessation. Second, there must be a reasonable expectation that "the same complaining party would be subjected to the same action again." *Barbara H.*, 183 Ill. 2d at 491.

In the present case, there is no question that the first criteria has been met. As noted, the order was limited to 90 days. Both the parties and the appellate court agree that "this challenged order was of such short duration, it could not have been fully litigated prior to its cessation." 379 Ill. App. 3d at 1029. Therefore, the only question

with regard to this exception is whether there is a reasonable expectation that respondent will personally be subject to the same action again.

Respondent reads the phrase "same action" as broadly meaning an " 'equal' or 'equivalent,' but not necessarily 'identical' " action. Under this reading, respondent maintains that "he is likely, based on his diagnosis and history, to face the same action again—i.e. a petition for involuntary admission."

The State, however, counters this argument by asserting that this reading ignores the justification for the exception. The State argues that the basis for this exception to an otherwise moot case is "that resolution will likely be relevant to a future controversy affecting the same party." Because respondent's claim is one of insufficient evidence, the State asserts that even a similar case would present a completely different issue and, therefore, "no meaningful purpose would be served in deciding the [present] moot appeal."

Though respondent is correct that the actions need not be identical, he nevertheless overlooks that the actions must have a substantial enough relation that the resolution of the issue in the present case would be likely to affect a future case involving respondent. In *In re A Minor*, this court considered whether the capable of repetition yet avoiding review exception could be applied to hear the otherwise moot appeal of a newspaper that had been prohibited from publishing the name of a juvenile charged in a closed criminal proceeding. In the course of holding that the newspaper's appeal fell within this exception to mootness, this court reasoned that an appellant need not "demonstrate that the statute will in the future be applied in precisely the same circumstances or for precisely the same reasons. Such a requirement would mean that no case would ever be 'capable of repetition,' for the simple reason that the facts of a future case

might be slightly different." *In re A Minor*, 127 Ill. 2d 247, 259 (1989). Instead, the court noted that it was "sufficient that the same statutory provision will most likely be applied in future cases involving the same party." *A Minor*, 127 Ill. 2d at 259. The statute at issue that would "likely be applied in future cases involving the same [newspaper]" was a provision in the Juvenile Court Act that supposedly allowed a court to prohibit the paper from disclosing the name of the minor who had been charged. *A Minor*, 127 Ill. 2d at 263-64. Thus, when this court stated that the likelihood of the same statutory provision being "applied in future cases involving the same party" was sufficient to overcome mootness, the court implicitly reasoned that resolution of the paper's constitutional challenge to the application of the statute would have some impact on future cases, as the paper was likely to seek the right to publish the name of a juvenile charged in a future case. Simply stated, there must be a substantial likelihood that the issue presented in the instant case, and any resolution thereof, would have some bearing on a similar issue presented in a subsequent case.

Respondent does not meet this burden. His claim on appeal is that the trial court lacked sufficient evidence to order his involuntary commitment. Respondent does not raise a constitutional argument or challenge the interpretation of the statute. Instead, he disputes whether the specific facts that were established during the hearing in this specific adjudication were sufficient to find respondent was a danger to himself or to others. There is no clear indication of how a resolution of this issue could be of use to respondent in future litigation. The court acknowledges that though it is possible that the resolution of such questions could be helpful to future litigants, we do not, as stated earlier, "review cases merely to set precedent or guide future litigation." *Berlin*, 179 Ill. 2d at 8.

IV. The Collateral Consequences Exception

Respondent's third established exception to the mootness doctrine is the "collateral consequences exception." The collateral consequences exception to mootness allows for appellate review, even though a court order or incarceration has ceased, because a plaintiff has " 'suffered, or [is] threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.' " *Spencer v. Kemna,* 523 U.S. 1, 7, 140 L. Ed. 2d 43, 49-50, 118 S. Ct. 978, 983 (1998), quoting *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477, 108 L. Ed. 2d 400, 410-11, 110 S. Ct. 1249, 1253 (1990). Therefore, "[s]ubsistence of the suit requires *** that continuing 'collateral consequences' *** be either proved or presumed." *Spencer,* 523 U.S. at 8, 140 L. Ed. 2d at 50, 118 S. Ct. at 983.[3]

The appellate court rejected this exception stating, without support, that

> "the collateral-legal-consequences exception to the mootness doctrine has no place in determining whether an issue is moot in a mental-health case. Regardless of whether a previous involuntary-admission order as to a particular respondent is upheld or reversed on appeal, that respondent's history of mental illness and involuntary treatment will continue to exist, and will be a factor that treating medical personnel may consider. It is that history that will possibly follow the respondent, not the fact of an adjudication. Accordingly, we hold that we will no longer adhere to *** cases in which this court utilized the collateral-legal-

---

[3]This court has never expressly addressed whether in a mental health case collateral consequences must be proven by the party asserting justiciability as in the ordinary civil case or whether they will be presumed as in a criminal appeal that is brought after a defendant's sentence has terminated. See *Sciara,* 21 Ill. App. 3d at 895. As explained below, regardless of the outcome of this question, respondent, in the present case, does not experience collateral consequences sufficient to invoke the exception in this case.

consequences exception to the mootness doctrine in mental-health cases." 379 Ill. App. 3d at 1029.

Contrary to the holding of the appellate court, the collateral consequences exception to the mootness doctrine is applicable in mental health cases and has been recognized by a host of Illinois court opinions, including opinions of this court. See *In re Splett*, 143 Ill. 2d 225, 228 (1991) ("Review is nonetheless appropriate, as the collateral consequences related to the stigma of an involuntary admission may confront respondent in the future"); *In re Hays*, 102 Ill. 2d 314, 317 (1984) (stating that "review of the circuit court's action is appropriate, as the character of an involuntary commitment has been held to be of sufficient significance to permit the invoking of the 'collateral consequence' exception to the mootness doctrine"). See also *Boyd*, 41 Ill. App. 3d 538; *Alex T.*, 375 Ill. App. 3d 758; *In re Wathan*, 104 Ill. App. 3d 64 (1982); *Sciara*, 21 Ill. App. 3d 889.

Though the appellate court is correct that the mere reversal of an adjudication will not, in itself, purge a respondent's mental health records of any mention of the admission or treatment, that is not the same as saying that there is no effect whatsoever. In fact, there are a host of potential legal benefits to such a reversal. For instance, a reversal could provide a basis for a motion *in limine* that would prohibit any mention of the hospitalization during the course of another proceeding. Likewise, the reversal could affect the ability of a respondent to seek employment in certain fields. See 225 ILCS 80/24(a)(16) (West 2006) (allowing for the refusal to issue a license or to revoke a license to practice optometry based on mental illness).

However, despite the survival of the collateral consequences exception, its application is still decided on a case-by-case basis. *Sciara*, 21 Ill. App. 3d at 894.

When the facts of this specific case are considered, there are no collateral consequences that warrant an

exception to the mootness doctrine. In this case, respondent has had multiple involuntary commitments prior to the present case. In addition, respondent is a felon who has served a sentence for murder. Simply stated, there is no collateral consequence that can be identified that could stem solely from the present adjudication. Every collateral consequence that can be identified already existed as a result of respondent's previous adjudications and felony conviction.

### V. General Policy Considerations

Respondent's final argument is that his case should be considered despite its mootness because general "policy considerations warrant review" when a respondent exercises his right to appeal. Respondent argues that appellate review is important because it is "therapeutic to provide procedural justice to mental health respondents." Under respondent's description of "therapeutic jurisprudence," appeals are important because the denial of the right to appeal can " 'produce feelings of worthlessness and loss of dignity' " and " 'limit the potential that hospitalization [or treatment] will have its desired beneficial effects.' " Quoting B. Winick, Civil Commitment: A Therapeutic Jurisprudence Model 146-47 (2005).

Respondent's argument, that providing an absolute right of appeal to respondents of civil commitment proceedings may be beneficial to both the emotional well-being of the person and to the mental health goals of the system, is very informative. However, it is not independently sufficient to warrant an exception to the well-established mootness doctrine. Respondent cites no case, and this court finds none, that would lead us to a contrary conclusion. It is not appropriate for this court to create a new exception simply because we believe that it may have tangential benefits to respondents in mental health cases.

## CONCLUSION

Respondent's case is moot and he has failed to establish that any exception to the mootness doctrine applies in this case. Accordingly, we affirm the appellate court's judgment, albeit on different grounds, and dismiss respondent's appeal as moot.

Though we ultimately affirm the appellate court's judgment that respondent's appeal should be dismissed as moot, we stress that the evaluation of the established mootness exceptions must be conducted on a case-by-case basis. This evaluation must consider all the applicable exceptions in light of the relevant facts and legal claims raised in the appeal.

*Judgment affirmed.*