NOTICE

Decision filed 04/15/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 160370-U

NO. 5-16-0370

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 14-CF-242 |
| | ) | |
| IESHA CHILDRESS, | ) | Honorable |
| | ) | Kimberly L. Dahlen, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BOIE delivered the judgment of the court.
Presiding Justice Welch and Justice Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held:* The revocation of the defendant's probation and subsequent sentence to the Illinois Department of Corrections are affirmed where revocation of her probation was supported by a preponderance of the evidence and any issue regarding her sentence is moot.

¶ 2    The defendant, Iesha Childress, appeals the circuit court's revocation of her probation and sentence to the Illinois Department of Corrections (IDOC). The Office of the State Appellate Defender (OSAD) was appointed to represent the defendant. OSAD filed a motion to withdraw as counsel, alleging that there is no merit to the appeal. See *Anders v. California*, 386 U.S. 738 (1967). The defendant was given proper notice and granted an extension of time to file briefs, objections, or any other document supporting her appeal. The defendant did not file a response. We considered OSAD's motion to withdraw as counsel on appeal. We examined the entire record on appeal and

1

found no error or potential grounds for appeal. For the following reasons, we grant OSAD's motion to withdraw as counsel on appeal and affirm the judgment of the circuit court of Jackson County.

¶ 3                                    BACKGROUND

¶ 4     At the time of the events giving rise to this appeal, the defendant was a ward of the State and was living in a Transitional Living Program (TLP)[1] managed by Centerstone, a mental health provider. While living in an apartment managed by Centerstone, the defendant set fire to material outside the door to her apartment and then retreated inside, where she was found attempting to start another fire. As a result of these actions the defendant was charged with attempted arson. She pleaded guilty in exchange for a sentence of 30 months' probation. In addition to the standard conditions of probation, the defendant was barred from possessing a lighter or matches and was required to abide by Centerstone's rules.

¶ 5     The State filed a petition to revoke the defendant's probation, alleging that she had been in possession of a lighter, had left Centerstone without permission, and was not taking her medication. The defendant admitted to possessing a lighter and the court resentenced her to 30 months' probation subject to the conditions previously mentioned.

¶ 6     Less than two months later the State filed a second petition to revoke the defendant's probation, alleging that she had violated the conditions thereof by committing the offense of disorderly conduct (720 ILCS 5/26-1(a) (West 2016)). The State alleged that the defendant, while a passenger in a van driven by a Centerstone employee, attempted to jump from the moving van and pulled the keys from the moving van causing the Centerstone employee to lose control and the van to run a red light and drive across multiple lanes of traffic. The petition to revoke also alleged

---

[1]A transitional living program is a program for wards of the State aged 18 to 21 designed to prepare wards to live on their own. In this case, the TLP provided mental health services to the defendant.

that the defendant violated Centerstone's rules by being absent from the facility without permission.

¶ 7    At the probation revocation hearing, Kim Zang, the TLP coordinator for Centerstone, testified that the defendant was given permission to spend a few days away from the Centerstone facility, but she was required to return on January 13, 2016. The defendant did not return on that day. Ultimately, she returned to Carbondale on January 19, 2016.

¶ 8    Kaitlin Blakeney, the Centerstone employee tasked with picking the defendant up from the train station on January 19, 2016, testified to the following. After picking up the defendant, Blakeney informed the defendant that they were going to the police station to remove a missing person report for the defendant. The defendant became combative and attempted to jump out of a window while the van was in motion. She also grabbed at the steering wheel. Finally, the defendant removed the keys to the van while the van was in motion causing Blakeney to lose control of the van and roll through a red light and across the intersection while there were vehicles nearby on the cross street. Blakeney testified that she was disturbed and alarmed when the defendant grabbed for the steering wheel and removed the keys. Blakeney feared for her safety as well as the safety of the other passenger in the van.

¶ 9    Officer Benjamin Maether, who was dispatched to the scene, testified that the defendant admitted to grabbing the steering wheel but said it was unintentional. According to Officer Maether, the defendant also admitted to grabbing the keys from the moving van.

¶ 10    The defendant testified that she had received permission to be away from Centerstone to visit her significant other. On January 13, 2016, the date she was required to return, she contacted Centerstone and requested permission to stay a little longer so she could find a sitter for her partner's children. The Centerstone employee she spoke with told her that she did not have to

3

return that day. Some days later, after finding the needed sitter, the defendant called Centerstone to arrange for return transportation. The defendant went on to testify that when she first met Blakeney, she told her that she needed to go to the hospital because she was having suicidal thoughts. She also expressed to Blakeney that she thought she had fractured her finger. The defendant testified that she rolled down a window and threatened to jump out but that she never attempted to do so. The defendant denied grabbing the steering wheel or keys in the van. On cross-examination the defendant testified that she did not return to Centerstone when she was supposed to.

¶ 11    The circuit court found that the defendant had violated the condition of her probation by not returning to Centerstone when she was supposed to and by committing the offense of disorderly conduct. The circuit court revoked her probation. Following a sentencing hearing on July 14, 2016, the circuit court sentenced the defendant to five years' incarceration with the IDOC. The defendant appeals.

¶ 12                                    ANALYSIS

¶ 13    OSAD begins by noting, this appeal is limited to the final revocation of the defendant's probation and her sentence to the IDOC. We agree. The defendant may not raise any issues regarding her initial conviction and sentence or the first revocation of her probation and resentencing because no timely notice of appeal from those judgments was filed. *People v. Curry*, 2019 IL App (3d) 160783, ¶¶ 13-17 (citing *People v. Stueve*, 66 Ill. 2d 174 (1977)).

¶ 14    OSAD identifies two potential issues. The first is whether the State proved by a preponderance of the evidence that the defendant violated the terms of her probation. The second is whether any issue regarding the defendant's sentence is moot because the defendant has completed her term of incarceration and her term of mandatory supervised release (MSR).

4

¶ 15                                   Revocation

¶ 16    In order to revoke the defendant's probation the State was required to prove by a preponderance of the evidence that the defendant violated terms of her probation. 730 ILCS 5/5-6-4(c) (West 2016); *People v. Williams*, 303 Ill. App. 3d 264, 267 (1999). We will not reverse the circuit court's decision unless it is against the manifest weight of the evidence. *Williams*, 303 Ill. App. 3d at 267-68. "Because the trial court has heard the testimony, seen the witnesses, and had the opportunity to observe their demeanor, it is in the best position to judge the witnesses' credibility, determine the weight to be accorded their testimony, decide the inferences to be drawn from the evidence, and resolve any conflicts in the evidence." *People v. Frazier*, 248 Ill. App. 3d 6, 13 (1993). Unless we find the circuit court's judgment to have been manifestly erroneous, we will not substitute our judgment for that of the circuit court. *Id.*

¶ 17    One of the terms of the defendant's probation was that she obey Centerstone's rules, one of which was that the defendant not be absent from Centerstone without permission. Centerstone permitted the defendant to be away from the facility for several days, but she was required to return on January 13, 2016. Multiple witnesses testified that the defendant did not return to Centerstone until January 19, 2016. The defendant testified that she was given permission to stay away from Centerstone until after January 13, 2016. Ms. Zang testified that the defendant did not have permission to be away from Centerstone past January 13, 2016. The testimony given at the hearing created an issue regarding the credibility of the witnesses. Here, the trial court gave greater credence to the testimony from the State's witnesses that the defendant violated Centerstone's rules by being away from the facility past January 13, 2016, than it did to the defendant's testimony. We cannot say that the trial court's determination that the defendant violated a term of

5

her probation by being absent from Centerstone without permission was contrary to the manifest weight of the evidence.

¶ 18    The State also proved that the defendant committed the crime of disorderly conduct. A person commits the offense of disorderly conduct by doing "any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26-1(a)(1) (West 2016). Undoubtedly, grabbing the steering wheel, threatening to jump out of the moving van, and pulling the keys from the van causing it to roll through an intersection are unreasonable acts done in a manner to alarm or disturb another, and Blakeney testified to being alarmed. "Generally, to breach the peace, a defendant's conduct must threaten another or have an effect on the surrounding crowd." *People v. McLennon*, 2011 IL App (2d) 091299, ¶ 31. Here, the defendant's actions threatened direct harm to the occupants of the van and indirect harm to those driving around the van. The State introduced sufficient evidence to demonstrate that the defendant's actions were a breach of the peace, thereby establishing that the defendant committed the offense of disorderly conduct.

¶ 19                                    Sentence

¶ 20    According to IDOC's website, the defendant has completed both her term of incarceration and her term of MSR.[2] Because the defendant has finished serving her sentence, any argument regarding her sentence would be moot.

¶ 21    An issue on appeal is moot when the underlying facts have changed such that the court cannot grant relief. *In re Shelby R.*, 2012 IL App (4th) 110191, ¶ 16; *People v. Roberson*, 212 Ill. 2d 430, 435 (2004). In most cases, a challenge to a sentence that has been completely served is

---

[2]https://www2.illinois.gov/idoc/offender/pages/inmateSearch.aspx (last visited Feb. 18, 2020)), of which we may take judicial notice (*Cordrey v. Prisoner Review Board*, 2014 IL 117155, ¶ 12).

moot. *In re Shelby R.*, 2013 IL 114994, ¶ 14. But there are exceptions to the mootness doctrine. *In re Alfred H.H.*, 233 Ill. 2d 345 (2009).

¶ 22    If there are collateral consequences to the issue raised on appeal, an exception to the mootness doctrine may apply. *Id.* at 362-63. In *Alfred H.H.*, the court held that the collateral consequences doctrine applied to the propriety of an involuntary mental-health admission. *Id.* The court reasoned that a person appealing an involuntary admission, especially where no prior such admission existed, faced possible collateral consequences because, for example, such a record could impede a person's ability to work in certain fields. *Id.* No such collateral consequences exist regarding the defendant's sentence.

¶ 23    Another exception exists for issues that are capable of repetition but evade review due to the court's inability to resolve the issue before the cessation of the issue. *In re Barbara H.*, 183 Ill. 2d 482, 491 (1998). The capable-of-repetition exception cannot be invoked unless "there is a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* We will not presume that the defendant will be again convicted for the same crime, violate her probation twice, and be sentenced to the IDOC.

¶ 24    Finally, a public-interest exception to the mootness doctrine may exist. Three elements must be met before such an exception can be invoked: (1) the question presented is of a public nature, (2) public officers need authoritative guidance, and (3) it is likely the same issue will recur. *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 12. The exception applies only when each element is established. *Id.* ¶ 13. There is no dearth of existing case law regarding probation revocation or sentencing for attempted arson. The second element of the public-interest exception is not met because there is no need for guidance of public officers; the

7

case law concerning any argument the defendant could make is ample, so the exception does not apply.

¶ 25    Any argument regarding the defendant's sentence would be moot, and no exception to the mootness doctrine applies.

¶ 26                                    CONCLUSION

¶ 27    The circuit court properly revoked the defendant's probation because she committed the crime of disorderly conduct and because she violated the rules of Centerstone. Additionally, any argument regarding her sentence is moot. We grant OSAD's motion to withdraw and affirm the decision of the circuit court of Jackson County.

¶ 28    Motion granted; judgment affirmed.