NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231548-U

NO. 4-23-1548

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 14, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| RASHAD JEFFRIES, | ) | No. 23CF2873 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Scott Paccagnini, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Lannerd and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The State did not prove the trial court abused its discretion in granting defendant
            pretrial release.

¶ 2        The State appeals the trial court's order denying its petition to deny defendant,

Rashad Jeffries, pretrial release under section 110-6.1 of the Code of Criminal Procedure of 1963

(Code) (725 ILCS 5/110-6.1 (West 2022)), hereinafter as amended by Public Acts 101-652,

§ 10-255 and 102-1104, § 70 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act.

We affirm.

¶ 3                            I. BACKGROUND

¶ 4        On December 4, 2023, defendant was charged with aggravated battery to a child

(720 ILCS 5/12-3.05(b)(1) (West 2022)). The State alleged defendant, on October 23, 2023,

knowingly caused a head injury to R.J. (born on August 4, 2023).

¶ 5 On December 15, 2023, the State filed a verified petition to deny defendant pretrial release under the dangerousness standard. At the hearing held the same day, the State proffered the following:

"First, start with the probable cause statement which indicates that the—the two-month-old victim in this case was—went to the Swedish American Hospital because he was throwing up and feeling lethargic. Doctors were able to determine that the minor child had left-side brain bleed. The defendant said that while he was tending to the child that morning that he was walking into the kitchen carrying the child and accidentally bumped his head into a door frame. Officers were able to get to the conclusion that this couldn't have possibly happened based on the inconsistencies of the account of what the defendant said happened and what the other individual stated.

Additionally, Your Honor, the child's condition is very serious. He suffered cardiac arrest in the operating room. Hospital staff had to do CPR for 40 minutes. He's on maximum life support. The scans showed several subdural hemorrhages in several spots of his brain. The doctor further advised that there were chest X-rays which showed multiple rib fractures in various stages of healing which is indicative of ongoing, long-term abuse. And again, this is

only a two-month-old child to have multiple rib fractures is very concerning.

Detectives met with the—with Tameka D[.] who said that she had previously seen the defendant physically abusing the child when they lived in Sauk Village, Illinois. I'm sorry, this was another child that was—there was no report of abuse based on that.

The UW Madison also learned or diagnosed the victim with a femur fracture that was also healing. Again, indicative of very, very consistent and frequent abuse. The child's mother stated that the defendant would yell at the minor—minor victim as a newborn telling him to shut up and stop crying. UW Madison reported on November 6 that the victim was nowhere near close to *** baseline or a normal functioning infant, irritable and in a lot of pain requiring regular morphine. He'll likely need more surgeries on his skull in the future. He'll continue to need to be fed through a tube. His brain will likely never allow him to return to being a completely normal infant or child. On November 20th, the victim had another head surgery to fuse his skull back together. He also had to have a G-tube placed to allow the child to eat."

¶ 6    The factual summary, which the trial court expressly considered, contained the facts relied upon by the State. It also established defendant is R.J.'s father. Tameka D., referred to by the State at the hearing, is R.J.'s maternal grandmother. She advised she had witnessed

defendant abuse his other son, born March 26, 2022. This incident was not reported to the authorities. According to the factual summary, Tia R., R.J.'s mother, reported she had lied to police earlier and was not present the night R.J. was injured. While she had earlier supported defendant's alleged version of the events, Tia said she was not home but out with friends that night. Video surveillance confirmed Tia was not home. When she returned home, she found her older son still sleeping, but defendant and R.J. were on the bed, and R.J.'s eyes had rolled back into his head. Defendant said the baby was fine but having congestion. Tia insisted they call 911. Tia reported to the officer defendant was not helpful after she gave birth to their older son. Defendant would yell at the older son when he was a newborn, telling him to shut up and stop crying. Defendant often told Tia their older son needed "to toughen up" and Robinson should not " 'baby him.' "

¶ 7        Defendant had two Dane County, Wisconsin, cases with charges of disorderly conduct and criminal damage to property. The cases showed domestic-abuse assessments were ordered. The State further reported defendant said he wanted to have 10 children and he denied having a temper. The State argued, based on the Dane County cases, which "appeared to be possibly domestic related," and the Class X felony he had been charged with, defendant is a "danger to children and any minors that he's around" and should be detained. The State further argued no condition or combination of conditions could mitigate the threat defendant poses.

¶ 8        Defense counsel asked the trial court to take judicial notice of Winnebago County case Nos. 23-JA-394 and 23-JA-393, "a companion case for the other child." Both cases were filed immediately after the date of the alleged offense in October 2023. In these cases, there were orders in place regarding visitation. Defendant had no contact with either child or the children's

mother since that date, and he did not know where the children were. Defendant had no criminal record and resided in Kankakee, Illinois. Counsel argued, based on the amount of time that had lapsed and defendant's lack of a criminal history, defendant should not be detained and the State failed to meet its burden of showing he posed a real and present threat to the safety of a person or persons or the community or that no condition or conditions of release could mitigate any threat.

¶ 9 In reaching its decision, the trial court referenced the December 15, 2023, pretrial services report. According to the report, defendant was born on April 24, 2001. Defendant was unemployed. Defendant had no verifiable juvenile adjudications. Defendant reported occasional use of tetrahydrocannabinol (THC), having last used it "a couple weeks ago."

¶ 10 The trial court denied the State's petition, stating:

"I also find the State has proven by clear and convincing evidence that the defendant poses a real threat to the alleged victim. I do not find the State has proven by clear and convincing evidence that the State has proven the defendant poses a real and present threat to the community as a whole.

And so I also find the State has failed to prove that the defendant—that there are no conditions or combinations of conditions that would mitigate the real and present threat to the alleged victim and those are for the following reasons[:] the defendant has no prior criminal history; he's a risk level of five which is moderate. He does have those pending matters in Dane County; however, what the Court has looked at is in 23 JA 393 and

394. It's clear the defendant has had no contact with the alleged victim. The alleged victim is in the hospital. It was my understanding that the defendant was prohibited from seeing him at the hospital and that [the Illinois Department of Children and Family Services (DCFS)] has set up visitation at their discretion at some point although that is not currently in place.

So I'm going to deny the State's petition. I'm going to order that the defendant report to pretrial services within 24 hours of his release and that he have no contact with the alleged victim except with the discretion of DCFS which it appears that they are working towards."

¶ 11 In a written order, the trial court further ordered defendant comply with the earlier conditions of pretrial release order. There are two pretrial release orders that order conditions. Both are dated December 15, 2023. The first mandates defendant have no contact with "R.J. (DOB 8/4/2023)." The second condition of pretrial release order bars defendant from having any contact with "Any Minors, R.J. (DOB 8/4/2023) only at DCFS Discretion" and barring defendant from coming "within 300 feet of her/him or their residence."

¶ 12 This appeal followed.

¶ 13                                  II. ANALYSIS

¶ 14 On December 20, 2023, the State filed a notice of appeal challenging the denial of its petition to deny defendant's pretrial release under Illinois Supreme Court Rule 604(h) (eff. Dec. 7, 2023). The State also filed a supporting memorandum. The State's notice of appeal is a

completed form from the Article VI Forms Appendix to the Illinois Supreme Court Rules (see Ill. S. Ct. R. 606(d) (eff. Dec. 7, 2023)), by which it asks this court to reverse the order denying its petition to deny defendant pretrial release. The form lists several possible grounds for appellate relief and directs appellants to "check all that apply and describe in detail." The State checked one box.

¶ 15    The only ground for relief checked by the State in its notice of appeal is the trial court erred in determining the State failed to meet its burden of proving by clear and convincing evidence defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case. Under the preprinted text, the State wrote the following: "The court abused its discretion in finding the State had not met its burden where the factual proffer presented by the State showed that defendant intentionally and severely injured a two-month-old child, and that at the time of this offense, defendant had pending domestic-related charges in Wisconsin."

¶ 16    Before a trial court may grant a petition to deny a defendant pretrial release under section 110-6.1(a)(1) of the Code (725 ILCS 5/110-6.1(a)(1) (West 2022)), the State must prove, among other factors, defendant "poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." *Id.* § 110-6.1(e)(2). The plain language of section 110-6.1(e)(2) establishes this element or factor is satisfied with proof defendant poses a real and present threat to either a person *or* persons *or* the community. *Id.*

¶ 17    In this case, the trial court found the State clearly and convincingly proved defendant posed a real and present threat to a person, R.J. The State's assertion in its notice of

appeal the court erred in not finding this element proved is, therefore, baseless.

¶ 18         It appears, from its supporting memorandum, the State attempts to challenge the trial court's conclusion defendant was not a threat to the *community*. It does so to challenge the court's finding the State failed to prove another prerequisite for pretrial detention under section 110-6.1(a): "no condition or combination of conditions *** can mitigate *** the real and present threat to the safety of any person or persons or the *community*." (Emphasis added). *Id.* § 6.1(e)(3).

¶ 19         The flaw in this argument is the State did not appeal the trial court's determination it failed to prove clearly and convincingly no condition or combination of conditions can mitigate the threat in its notice of appeal. The box next to that argument in the form notice of appeal is not checked and no argument is provided. Any challenge based on the conditions element is therefore forfeited. See *People v. Gatlin*, 2024 IL App (4th) 231199, ¶ 13 (establishing issues not fairly raised through a liberal construction of the notice of appeal are forfeited) (citing *People v. Martin*, 2023 IL App (4th) 230826, ¶ 19)) . As the State has made no argument we may forgive this forfeiture, we will not do so.

¶ 20         The State's challenge in its memorandum to the trial court's finding defendant is not a threat to the community is, therefore, moot. See *In re Alfred H.H.*, 233 Ill. 2d 345, 351, 910 N.E.2d 74, 78 (2009). Generally, Illinois courts do not decide moot questions, issue advisory opinions, or decide issues where the result will not be affected by a decision. *Id.* Here, a decision on whether the court erroneously concluded defendant was not a threat to the community will have no effect on the result of this appeal. As shown above, the court's finding the State proved clearly and convincingly defendant was a threat to R.J. was sufficient to satisfy that prerequisite

for a detention under section 110-6.1(e)(2). In addition, as it may have had some relevance as to the court's determination on the conditions element, that issue has been forfeited, and no relief can be granted on that ground regardless of whether defendant is a threat to the community.

¶ 21                                  III. CONCLUSION

¶ 22          We affirm the trial court's judgment.

¶ 23          Affirmed.