2025 IL App (2d) 240556-U
No. 2-24-0556
Order filed January 30, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| DONALD A., | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 24-OP-790 |
| | ) | |
| CARLY R., | ) | Honorable |
| | ) | Cynthia D. Lamb, |
| Respondent-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE KENNEDY delivered the judgment of the court.
Justices Hutchinson and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court erred in granting a plenary order of protection against the respondent, where petitioner failed to demonstrate by a preponderance of the evidence that allowing the parties' son to possess firearm ammunition placed him at immediate risk of physical harm, and the trial court's decision was based in part on facts which were not in evidence. Reversed.

¶ 2    On appeal respondent, Carly R., challenges the trial court's entry of a plenary order of protection against her in favor of petitioner, Donald A., and their minor child L.A. She also challenges the trial court's order denying her petition to rehear the order of protection, filed after the entry of an emergency order of protection. Carly acknowledges that the issue regarding her petition to rehear the order of protection is moot and, as discussed later, we decline to address the

issue as an exception to the mootness doctrine, and address only the entry of the plenary order of protection. For the following reasons we reverse the trial court's plenary order of protection.

¶ 3                                I. BACKGROUND

¶ 4    Donald and Carly had one child together, L.A., who was 10 years old at the time the plenary order of protection was entered. Prior to the entry of the emergency order of protection, Carly had majority parenting time. On July 8, 2024, Donald filed a petition seeking an emergency order of protection against Carly for himself and L.A. The petition alleged, in relevant part,[1] that around 9:30 p.m. on July 7, 2024, Donald was looking through L.A.'s backpack trying to find eye drops. While doing so, he discovered 13 rounds of live ammunition. That night, Donald made a report to the Department of Children and Family Services and the Lake in the Hills Police Department. The police took the ammunition into evidence. The morning of July 8, 2024, Donald asked L.A. where he had gotten the ammunition, and he told him that he had gotten it from Carly's fiancé, Drew Polte.

¶ 5    The court entered an emergency order of protection on July 8, 2024, which gave Donald physical care and possession of L.A. and barred Carly from communicating with Donald and L.A. The order was effective through July 19, 2024.

---

[1]The petition also raised several additional allegations which the trial court ultimately found to be "allegations of poor parenting decisions," which even if true, "did not rise to the level of abuse as defined under the Illinois Domestic Violence Act ***." These included, *inter alia*, allegations that Carly was not attending to L.A.'s hygiene, that Carly and Drew got into a loud argument in L.A.'s presence, that L.A. had missed a significant amount of school, and that Carly had created explicit TikTok posts at work while L.A. was also in the building.

¶ 6 On July 12, 2024, Carly filed a petition to rehear order of protection. In her petition, she argued that the allegation concerning L.A.'s possession of ammunition was not an act of abuse for the purposes of issuing an order of protection and the other allegations were too remote in time to support emergency relief. A hearing was held on Carly's petition on July 22, 2024. The trial court denied Carly's petition and entered an interim order of protection, effective through August 27, 2024.

¶ 7 A plenary hearing was held on August 26, 2024. Following the hearing, the trial court took the matter under advisement and extended the interim order of protection through September 17, 2024. On September 17, 2024, a plenary order of protection was entered effective through March 17, 2025. The order granted Donald physical care and possession of L.A. and allowed Carly unsupervised parenting time every other weekend. We summarize the pertinent testimony from the plenary hearing.

¶ 8 Donald testified about how he discovered ammunition in the front pouch of L.A.'s backpack. The ammunition included 13 live rounds. Donald testified that he had a valid FOID card and owned firearms and ammunition, but that the 13 bullets did not come from him, noting that most of the rounds were not for a caliber of firearm that he owned and that the brands were not ones he purchased.

¶ 9 L.A. testified that Drew had given him bullets "several times" and that Drew got them from his job at FedEx where they would sometimes fall out of packages being loaded onto the trucks. L.A. stated that he would put the bullets in "this like green snake thing," which he kept in his room. L.A. testified that Carly was there when Drew gave him the ammunition. Both Drew and Carly knew where he had kept the ammunition as he had discussed it with them. L.A. believed he had possessed the ammunition for "possibly" five months. The week of the Fourth of July, L.A.

decided to bring the ammunition to Donald as a gift. He placed the ammunition in his backpack but forgot to give it to Donald before he found it. L.A. had told Carly he was going to do this. He had not previously told Donald about the ammunition. L.A. knew that Donald possessed guns and ammunition, but he did not have access to them. L.A. described once seeing a sealed and ziplocked container when Donald was moving to a new home, which he believed contained ammunition because it was heavy.

¶ 10    Drew and Carly each denied any involvement in or prior knowledge of L.A.'s possession of the ammunition. Drew testified that neither he nor Carly had a FOID card. Carly testified that Donald possessed "thousands of rounds of live ammunition" and a "multitude" of guns.

¶ 11    The trial court entered a plenary order of protection finding that L.A. had been abused by being allowed to possess the ammunition and reasoned as follows:

"The Court finds that based on the credible testimony of the minor child that there was in fact abuse of the minor child by the respondent in that he—the minor child received 13 rounds of live ammunition from the respondent's boyfriend. Respondent was aware of this, knew that [L.A.] had kept the ammunition in his room, and knew that neither she nor her boyfriend possessed a FOID card. Respondent agreed that the minor child could have the ammunition and keep it. The minor child was left unsupervised with 13 live rounds of ammunition in his possession.

Further, mother knew that the minor's father had guns and ammo at his home and had previously shown the minor his weapons. Allowing a minor to have live ammunition for guns and/or rifles knowing that he knows where to gain access to them and knowing that he knows about a live and/or a spent round of ammunition and that live rounds of ammunition contain gun powder inside them is knowing or reckless conduct that creates

an immediate risk of physical harm thus physical abuse."

¶ 12    Carly timely appealed.

¶ 13                                    II. ANALYSIS

¶ 14    On appeal, Carly challenges (1) the trial court's denial of her petition to rehear order of protection, filed in response to the entry of the emergency order of protection, and (2) the entry of the plenary order of protection.

¶ 15    Regarding Carly's petition to rehear, she acknowledges that the issue is moot but argues that the public interest exception to the mootness doctrine should apply in this case.

¶ 16    "As a general rule, courts in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided." *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). There are, however, three recognized exceptions to the mootness doctrine, (1) the public interest exception, (2) the capable of repetition yet avoiding review exception, and (3) the collateral consequences exception. *Id.* at 355-63. Carly maintains that the public interest exception applies. "Application of this exception, which is narrowly construed, requires a clear showing of each of the following criteria: (1) the question presented is of a public nature; (2) an authoritative determination of the question is desirable for the future guidance of public officers; and (3) the question is likely to recur." *In re Shelby R.*, 2013 IL 114994, ¶ 16.

¶ 17    Specifically, Carly maintains that she had a meritorious defense to the entry of the emergency order of protection (750 ILCS 60/224(d) (West 2022)), in that Donald's petition did not state a claim for abuse. She further maintains that the trial court erroneously applied the wrong legal standard by failing to examine the pleadings, and instead "declaring that a 'totality of the circumstances' warranted leaving the Emergency Order of Protection in place."

¶ 18   We find that the public interest exception to the mootness doctrine does not apply in this case. A review of whether Donald's initial petition stated a claim for abuse is inherently specific to this case and does not present a question of a public nature. See *In re Alfred H.H.*, 233 Ill. 2d at 356 (holding that inherently case specific sufficiency of the evidence claims do not present issues of broad public interest). Likewise, we do not find that this case presents a question to which an authoritative determination would be desirable for the future guidance of public officers. See *In re Adoption of Walgreen*, 186 Ill. 2d 362, 365-66 (1999) (finding the need to make an authoritative determination for future guidance of public officers questionable where the law at issue was not in disarray nor was there conflicting precedent). Finally, the question of whether the pleadings in the instant case were sufficient to support the trial court's entry of an emergency order of protection are unlikely to recur, as the pleadings are unique to the instant case. Additionally, we do not believe that the trial court's use of the phrase "totality of the circumstances" alone demonstrates that the wrong legal standard was applied. Accordingly, we find that the public interest exception to the mootness doctrine does not apply to the question of whether the trial court erred in denying Carly's petition to rehear.

¶ 19   Turning to the plenary order of protection, "[i]n any proceeding to obtain an order of protection, the central inquiry is whether the petitioner has been abused." *Best v. Best*, 223 Ill. 2d 342, 348 (2006). Whether a petitioner has been abused is an issue of fact that must be proven by a preponderance of the evidence. 750 ILCS 60/205(a), 214(a) (West 2022); *Best*, 223 Ill. 2d at 348. We will reverse a trial court's finding of abuse only if it is against the manifest weight of the evidence. *Best*, 223 Ill. 2d at 348. " 'Abuse' means physical abuse, harassment, intimidation of a dependent, interference with personal liberty or willful deprivation but does not include reasonable direction of a minor child by a parent or person in loco parentis." 750 ILCS 60/103(1) (West 2022).

In the instant case, the trial court found that L.A. had been physically abused, which the Act defines as, "(i) knowing or reckless use of physical force, confinement or restraint; (ii) knowing, repeated and unnecessary sleep deprivation; or (iii) knowing or reckless conduct which creates an immediate risk of physical harm." *Id.* § 103(14).

¶ 20    The only potentially applicable definition of physical abuse in the instant case is "knowing or reckless conduct which creates an immediate risk of physical harm." An immediate risk of physical harm can involve acts of physical violence on the part of the abuser. See, *e.g.*, *People v. Nixon*, 2016 IL App (2d) 130514, ¶ 39 (firing a gun at a car adjacent to a home placed the occupants of the home in immediate risk of physical harm); *Frank v. Hawkins*, 383 Ill. App. 3d 799, 815 (2008) (destructive rampage involving upending furniture and throwing items created an immediate risk of physical harm to the children in the home). An immediate risk of physical harm can also occur where a child is placed at risk of harm by someone or something other than the abuser. See *In re T.H.*, 354 Ill. App. 3d 301, 310 (2004) (child placed in immediate risk of physical harm where mother directed child to perform oral sex on various men and required child to beg for money and steal food), *overruled on other grounds by Best v. Best*, 223 Ill. 2d 342 (2006) ; *In re Marriage of Holtorf*, 397 Ill. App. 3d 805, 811 (2010) (potential for immediate physical harm existed where mother brought children with her to shoplift or left them in a running car while shoplifting).

¶ 21    Carly argues that the trial court's finding of abuse was not based on the preponderance of the evidence, as the trial court's decision was based on facts not in evidence. Specifically, in rendering its decision, the trial court stated that Carly knew that L.A. knew where to gain access to guns/rifles. However, Carly maintains that there was no evidence regarding where or how Donald stored his firearms nor whether L.A. knew that information, let alone that Carly had known

that L.A. knew this. After reviewing the record, we agree with Carly that there was no evidence presented regarding how Donald stored his firearms or that L.A. knew how to access them. In fact, it was L.A.'s testimony that he did not have access to Donald's firearms.

¶ 22    As neither Carly, Drew, or L.A. had a FOID card, it was illegal for any of them to possess the ammunition (430 ILCS 65/2(2) (West 2022)). Donald urges that *Holtorf* stands for the proposition that when a parent engages in criminal conduct in the presence of their children, it meets the level of abuse required by the Act. However, this was not the holding. The *Holtorf* court held that, "[t]he potential for immediate physical harm, in [the mother] either bringing the children into the store or leaving them in a running car while committing a theft, is manifest." 397 Ill. App. 3d at 811. While the potential for harm may have been manifest for the *Holtorf* court, who had the benefit of the record on appeal, the opinion itself provides scant background details. For example, we do not know the age of the children. Presumably, the harm contemplated by the *Holtorf* court was either the risk that the mother would be detained while shoplifting, thus leaving the (presumably) young children alone in the car for an extended period; or that the children could be injured in a confrontation or flight should the mother be caught shoplifting. Additionally, the appellant in *Holtorf* did not provide a transcript or a bystander's report of the hearing held on the plenary order of protection and thus the *Holtorf* court was operating under the assumption that the trial court heard sufficient evidence to support its decision.[2]

¶ 23    Accordingly, *Holtorf* does not stand for the proposition that the commission of any crime in the presence of children automatically creates an immediate risk of physical harm. Therefore,

---

[2]A dubious prospect, given that the trial court did not actually find that the children had been abused, but rather, applying an incorrect standard, found the children to have been neglected. *Holtorf*, 397 Ill. App. 3d at 808-09.

we must consider whether L.A.'s possession of the ammunition alone created an immediate risk of physical harm as contemplated by the Domestic Violence Act (750 ILCS 60/103(14) (West 2022)). While there was presumably some risk that the ammunition could have ignited or exploded, causing injury to L.A., Donald presented no evidence as to what circumstances would cause such an ignition or the likelihood of injury should it occur. Accordingly, Donald failed to demonstrate by a preponderance of the evidence that L.A.'s mere possession of the ammunition created an immediate risk of physical harm.

¶ 24    While the Act is to be liberally construed and applied to promote its purposes as outlined in section 102 of the Act (750 ILCS 60/102 (West 2022)), the purpose of an order of protection is to stop further abuse, and not to determine issues of parenting time or responsibility. *Radke ex rel. Radke v. Radke*, 349 Ill. App. 3d 264, 268 (2004); *Wilson v. Jackson*, 312 Ill. App. 3d 1156, 1164 (2000).

¶ 25    While Donald filed his petition for an order of protection on the advice of the police and we do not believe that he acted in bad faith, the effect was that the trial court usurped the role of the family court in granting the plenary order of protection in this case. Whatever danger L.A.'s possession of the ammunition presented was gone by the time the trial court granted the plenary order of protection, which the trial court appears to have appreciated given that the plenary order of protection lasted only six months and allowed Carly unsupervised parenting time.

¶ 26    Allowing L.A. to possess the ammunition undoubtedly constitutes, as the trial court put it, a "poor parenting decision." Such a decision may support a modification of parenting time and responsibility, but that is a matter for the family court.

¶ 27                                    III. CONCLUSION

¶ 28    For the reasons stated, we reverse the judgment of the circuit court of McHenry County.

¶ 29    Reversed.